## MUNICIPALITY No. TWO, FOR OPENING EUPHROSINE STREET.

The act of April 3d, 1832, for opening streets, &c., in the city of New Orleans, is contrary to the article 109 of the Constitution of the State, so far as it authorizes private property to be taken for public uses, without an adequate compensation *previously* made.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge*, J. R. *Hunt* and *H. D. Ogden*, for appellee. *Lockett* and *Griffon*, for appellants. The judgment of the court was pronounced by

PRESTON, J. This is an application by the Second Municpality of New Orleans, to open Euphrosine street, from Hercules to Liberty streets, in pursuance to the act of the 3d of April, 1832. For that purpose, a parcel of ground belonging to *François Saulet*, having forty-five feet on Hercules street, and extending through to Benton street, on which it has the same front, is to be taken.

By commissioners of estimate and assessment, duly appointed and sworn, the portion of ground was appraised at two thousand dollars ($2000), and the buildings and improvements on the same, at three thousand five hundred dollars (3500)—$5500.

Provision for his payment was made, by estimating the advantages of the improvement of the municipality to him and to others, in which the advantage of the improvement to the square, from which the property was to be taken, and to other lots belonging to him, was estimated at $1623 50 ; leaving to be paid to him, $3876 50.

He and others opposed the report, and on the 23d of January, 1849, it was referred back to the commissioners for amendment.

After long investigation and consideration, on the 1st of October, 1849, they filed an amended report, in which they estimate the lot, to be taken from *François Saulet*, for the contemplated improvement, at $3000, and the buildings and improvements on the same, at $3000—aggregate, $6000 ; and estimated that his square and other property would be benefited to the amount of $1947, leaving to be received by him, $4053.

*François Saulet,* also opposed this report, alleging, that the property to be <span style="float:right">MUNICIPALITY<br>No. Two, FOR<br>OPENING EU-<br>PHROSINE ST.</span> taken from him was valued too low; and without denying the right of the muni-cipality to assess his property for the improvements to be made, alleged, that the amount assessed was too high.

He also claimed, under article 109 of the Constitution, that he should be paid, in cash, before the property was taken from him, its value.

The additional value that would be added to *François Saulet's* property, by the contemplated improvement, is fully proved by his own witnesses. *Moore,* a real estate broker, *Southmayd,* a vendor of lots in the vicinity, and *William Stackhouse,* who, by the particulars he mentions, is manifestly well acquainted with the value of property in the neighborhood, and its advantages and disadvantages, all agree that he would be benefited about two thousand dollars.

The commissioners allow him six thousand dollars for the aggregate value of his ground and buildings, to be taken for the improvement. *Stackhouse,* his own witness, states, that it is a pretty high estimate, and none of the witnesses prove that the estimate, in the aggregate, is too low; although *Southmayd* and *Rub* think the lots, to be taken separately from the buildings, should be estimated higher than three thousand dollars.

The testimony of the witnesses satisfies us, that the commissioners, on the whole, have done *Mr. Saulet* full justice. If, however, the evidence left any doubt on the subject, it is to be considered that the commissioners of estimate and assessment, in the words of the act of 1832, "are discreet and disinterested persons, competent to serve as jurors in the court, and sworn, faithfully, impartially, and according to the best of their skill and judgment, to perform the trust and duties required of them by the act;" that they are not chosen by lot, as ordinary jurors, but selected and appointed by the judge, and should be so appoint-ed, on account of their great skill and competency to perform the special duties required by the act, and are to be allowed four hundred and fifty dollars, with the fees of a clerk, for their services in this very case ; that they made two reports, or rendered two verdicts, if we may so speak, for the law likens them to jurors; the last of which, being more favorable to *Mr. Saulet,* was approved by the court, after hearing witnesses in opposition, for reasons which are entirely satisfactory to us. We are bound to give as much weight to his judgment, approving the report, as we would to an ordinary judgment, based upon the verdict of a jury, and the refusal of a new trial, after examining new evidence, in opposition to the verdict.

We do not think, however, that the district court should have altered the report, by allowing *Haywood Stackhouse* any part of the appraised value of the buildings. If the evidence had justified it, the assessment should have been referred back to the assessors, for the purpose of making the amendment under the decision of this court, in the application for the opening of Claiborne street. 4th Ann. 7. We think, however, the evidence would not justify the reference. The buildings became the property of *Saulet* on the 1st November, 1848, as appears by the contract between them. For the buildings erected under the first lease, were estimated in the second lease, made the 5th of October, 1847, at three thousand dollars, and to be insured at that sum. We presume, these are the buildings to be taken for the improvement, as we have no evidence that *Stack-house* had erected the additional buildings contemplated by the second lease, and to cost a thousand dollars. On the contrary, he left the premises, the first of February, 1848, a few months after the second lease was signed.

Had *Stackhouse* presented a distinct claim for damage, which the contem-
plated improvement would cause him as lessee, it is possible something would
have been allowed him by the commissioners, because he was entitled by the
lease, from *Saulet*, to occupy the buildings until 1852, upon the conditions of
paying four hundred and eighty dollars rent per annum, and erecting other
buildings of the value of one thousand dollars, to become *Saulet's* at the expira-
tion of the lease.

But instead of claiming indemnification, as a lessee in case of eviction, he
left the premises, even before the second lease was to commence, and claimed
the value of buildings, which did not belong to him, because erected under the
first lease, and became *Saulet's* before his claim was filed.

The demand of *Saulet*, to be paid in cash the value of his ground and build-
ings, before the municipality is put into possession of the same for the purposes
of public utility, is clearly accorded by article 109 of the Constitution. The
provisions of the act of 1832, to the contrary, are repealed by article 142 of the
*Constitution*; and the strict enforcement of this equitable and salutary provision
of the Constitution, is not only a sacred duty of this court, but will, probably,
greatly tend to restrain the waste and extravagance growing out of public
improvement, which, we fear, will become a burden to this, as it has been to
many other cities.

The judgment of the district court is therefore reversed, and it is decreed, that
the report of the commissioners of estimate and assessment of damages and
benefits, made on the first of October, 1849, be approved and homologated; and
it is further decreed, that the delivery of the property to Municipality No. Two,
for the purpose of opening Euphrosine street, shall not be enforced, until pay-
ment to *François Saulet*, of four thousand and fifty-three dollars; and that the
municipality pay one-half the costs of this appeal, the other half to be paid by
*Haywood Stackhouse*.

SLIDELL, J., dissenting. The principle that private property should not be
taken for public use, without provision being made for a just compensation to the
owner, was undisputed before the adoption of the present Constitution. An
express recognition of it, in a particular case, is found in the 489th article of our
Civil Code. But the framers of the Constitution of 1845, have wisely protected
the citizen by an additional safeguard, and have forbidden the divestiture of a vested
right, for purposes of public utility, unless an adequate compensation be previously
made. Without this clause, there might be room for difference of opinion, whe-
ther the compensation should precede, or might follow, the exercise of the right
of eminent domain. Authorities might be found to sustain the position, that a
previous provision for making such compensation, would suffice; while other
minds, more strongly impressed with the necessity of jealously protecting private
. right from the encroachments of public power, would adopt the stringent doctrine
of previous indemnity. Under the 109th article of our Constitution, it seems to
me, that question is put at rest.

It is necessary, then, to apply that clause of our Constitution to the statute,
under which these proceedings for the opening of Euphrosine stree, have been
conducted, and consider whether some provisions of the statute are not incom-
patible with it.

The theory of the statute is, that where a proprietor has a piece of land, of
which a portion only is taken for the proposed street, or public highway, he is
to be paid, not the value of the land so taken, but the excess of damage over
benefit; that is to say, the commissioners shall estimate the value of the land

taken, and the enhancement, if any, which, in their opinion, will result to the land left, and award him the excess.

The Constitution guarantees to the citizen, that his property shall not be taken from him, for a purpose of public utility, without an " adequate compensation previously made ;" and, in my opinion, the only safe construction of those terms is, the previous payment to him of the money value of the property taken. When you pay him, in the supposed prospective benefit which may accrue to other property belonging to him, you do not pay him in money, but in that which is uncertain and dependent on opinion and accident.

The constitutional difficulty is not at all obviated by the fifth section of the statute, which gives the proprietor, a part of whose land is taken, a right to surrender the whole at the estimated price of the whole. This right is clogged with many disadvantages and unconstitutional conditions. The citizen is obliged to declare his election and surrender his title, before the money is tendered to him ; and when he has so elected, he is bound, and the public are not. For it has been held, that until the tableau of assessment is confirmed, the municipal body may discontinue the proceedings, and the whole matter then falls to the ground.

The system of expropriation, provided in this statute, which was borrowed from another State, is not only liable to gross abuse, but, as far as my observation of its working enables me to speak, has been often an instrument of hardship and injustice. In one of the northern States, as I have been informed and believe, the evil was, at one time, carried to an alarming extent, and substantial landholders, under this system of improvement, were sometimes converted into paupers.

What is the practical working of the system in the present case ? *Saulet* is in the quiet enjoyment of a piece of ground, and a rental of four hundred and eighty dollars a year for a portion of it, which is built upon, the rest being vacant. The municipality says : We consider the public good will be promoted by taking your house and a part of your land from you, to make a street. The house and lot are worth six thousand dollars. We will pay you a part of this in money. But, we think, if you will put up houses on the rest of your land, or sell it, you will do better with it, than if the street had not been made. *Saulet* may, perhaps, reply : I have no means to build; I do not want to sell; and the expectation of enhanced value, is not a certainty. But the municipality rejoins, that does not matter. Here is part of the value of your house and ground, in money. For the residue, we give you, in payment, the opinion of our commissioners, that your vacant land will be hereafter worth more, and the chance of that opinion being realized.' Instead of gold or silver, we give you a probability.

Whether after the effects of an opening of a street have been actually developed, and the advantage, in an increased value of the portion left to the proprietor, has been actually realized, he might not be lawfully assessed with reference to such benefit, is another question, which need not now be considered.

Being of opinion, that the judgment of the district court, in this matter, rests upon an unconstitutional basis, I think it should be reversed.

Besides these considerations, the tableau of assessment seems to me, on its face, inconsistent in several instances with the theory upon which it purports to be made, and the theory of the statute ; and there are, also, discrepancies between this and the previous tableau or report, which I am unable to comprehend.