FRUGÉ, Judge.
The State of Louisiana, through the Department of Highways, seeks to expropriate a portion of the defendant-landowners’ property, a 58 acre tract now being used for agricultural purposes. The property is situated in Lafayette Parish, Louisiana, some seven miles west of the City of Lafayette, Louisiana, approximately two miles from the community of Ossun, and approximately two and one-half miles north of the Scott and Duson communities. U. S. Highway 90, the main east-west highway running through Lafayette Parish, is located approximately one mile south of the subject property.
The landowners’ property is rectangular in shape with its greatest length lying in the east-west direction. The Department of Highways seeks to expropriate the full ownership of a strip of land 300 feet wide and running the length of the subject property, approximately 180 feet north of the property’s southern boundary line.
The strip thus acquired is to be used for the construction of Interstate Highway 10, a limited access type highway of multiple lane design. After the taking, the landowners’ property will consist of two rectangular parcels separated by a limited access highway. Since prior to the taking, entrance to the subject property was gained via a short servitude road entering the subject property on its northern boundary, the southernmost parcel of the defendants’ property will be landlocked with no means of ingress or egress. This southern parcel consists of 11.10 acres, while the parcel remaining north of the expropriated strip contains some 28.5 acres. As the servitude road enters the property at its northern boundary, access to the northern portion is unaffected by the expropriation.
After trial on the merits the trial judge concluded that the best and highest use for which the property was suitable was that of rural homesites and accordingly he assigned it a value of $700.00 per acre. He further concluded that as a result of the taking the landlocked southern parcel suffered severance damages to the extent of sixty percent and that the northern remaining portion was damaged to the extent of thirty percent of its value. *372 During the trial, counsel for the Department of Highways agreed that the southern remaining property was damaged to the extent of sixty percent of its value and there is thus no issue on appeal as to that determination. What is at issue, though, is the trial judge’s classification of the subject property as suitable for rural home-sites, his decision that the property involved had a value before the taking of $700.00 per acre, and his determination that the northern portion of the property suffered severance damages to the extent of thirty percent of its value.
We first state some of the general principles of law which are applicable to the instant suit. The expropriating authority (in this case the State through the Department of Highways) must pay the fair market value of the property expropriated. By “fair market value” is meant the value which a willing purchaser would pay and a willing seller would accept at the time of the expropriation considering the best and highest use for which the property is suited. Texas Gas Transmission Corporation v. Broussard, 196 So.2d 620 (La.App.3d Cir. 1967); State through the Dept. of Highways v. Kemp, 141 So.2d 487 (La.App. 1st Cir. 1962), and authorities cited in those decisions. In addition to compensation for the property taken, the landowner is entitled to severance damages to the remainder of his property if it can be shown that the market value of the remainder is adversely affected by the taking. Central Louisiana Electric Co. v. Williams, 181 So.2d 844 (La.App.2d Cir. 1965); Texas Gas Transmission Corp. v. Broussard, supra; United Gas Pipeline Co. v. Nezat, 136 So.2d 76 (La.App.3d Cir. 1961), certiorari denied.
In connection with the market value of the property in the instant suit, the two expert appraisers who testified for the plaintiff-condemnor were of the opinion that the highest and best use of the land was agricultural, with a “rurban” influence. They further testified that using the “market data” approach, involving the use of comparable sales, they arrived at a valuation of $500.00 per acre prior to the taking. The expert appraisers called by the defendants, however, testified that in their opinion the highest and best use of the property herein was “rural homesites”, and through the use of some twenty-seven comparables they estimated that the property had a value before the taking of some $700.00 per acre. Many of the comparable sales used by the defendants were also employed by the appraisers who testified for the State. The plaintiff-condemnor claims that the opinions as to the value of the land expressed by the defendants’ appraisers are inaccurate and unrealistic because in arriving at these conclusions they considered prior sales of surrounding properties which are not truly comparable. The plaintiff thus argues that the value placed on the land by its appraisers should have been accepted as representing a more reliable indication of the value of the property herein. We have examined with care the extensive testimony of the appraisers involved and the comparable sales on which they respectively relied. The appraisers for the defendants testified that their higher estimate of value was based on the fact that the land in question is high, level and well drained and has along portions of its boundary lines large oak and pecan trees, enhancing its appeal for use as rural homesites. They further testified that in the general area in which the land is located there is a steady demand for rural homesites owing to the extensive growth of the City of Lafayette some seven miles distant and the relative scarcity of land suitable for such development.
The trial judge, after hearing the testimony of all the appraisers, accepted the opinions advanced by the defendants’ appraisers as representing the most accurate estimate of the value of the land involved and the uses to which it might be put. In his written reasons for judgment the judge *373 compared the property involved in the case of Gulf States Utilities Company v. Cormier, 182 So.2d 176 (La.App.3d Cir. 1966), to the property involved in the instant suit. He noted that both properties are located in the same general area (very near the community of Ossun), and that although the property in the instant suit is not quite as desirable as the property in the Gulf States suit, their best and highest use and the per-acre value could be favorably compared. In the Gulf States case this court upheld the lower court determination that property presently employed as agricultural lands was best suited for rural homesites though, as in the instant case, access to the property was gained through a private road, there being no public road frontage. In that case we also upheld a finding that the property concerned had a value of $1,000.00 per acre. In our opinion it would serve no useful purpose to further discuss either the lengthy testimony of the appraisers or the specific compara-bles and their relation to the subject property. We conclude, after carefully reviewing the record and the comparable sales contained therein, that the testimony given by the defendants’ appraisers is well supported by reason and good judgment and that the plaintiff has failed to demonstrate that the trial judge, in accepting the opinions of these appraisers, committed manifest error. We are therefore in agreement with the conclusions of the trial judge as to the best and highest use of the subject property and the valuation thereof.
Turning now to the issue of severance damages, we find the chief contention to be the propriety of the thirty percent severance damages allowed as to the northern remaining parcel, the sixty percent severance allowance to the southern landlocked parcel being uncontested. With regard to severance damages to the northern portion, plaintiff-condemnor’s experts testified that in their opinion there were no severance damages, since the property after the taking was just as suitable for any contemplated use as before the taking. The landowners’ experts, however, testified that in their opinion the property is less suitable for development after the taking because the expropriation drastically altered the geographic shape of the property. They explained that before the taking the subject property was rectangular in shape and had a reasonable ratio of length to width. After the taking, however, the northern remainder, though still rectangular in shape, has a width of only 450 feet compared to an unaltered length of 2,650 feet. In the opinion of the defendants’ appraisers, therefore, the effect of the expropriation was to leave the north remainder less desirable physically for purposes of future development. They further stated that as the shape of the property was now long and narrow, the cost of development would be relatively higher in relation to the return from the sale of rural lots than prior to the taking, when the ratio of width to length was more favorable. The landowners’ appraisers thus concluded that the north remainder had been damaged to the extent of thirty percent of its value.
Commenting on this issue in his reasons for judgment, the trial judge noted that:
“There was a stipulation that the southern reaminder of 11.10 acres suffered 60% severance damages.
“Concerning the northern remainder of 28.54 acres, the Court was impressed with Mr. Smith’s [the landowners’ expert appraiser] analysis of severance and the loss of maximum use of the property and agrees that his figure of 30% severance on the northern remainder is accurate and in keeping with the situation presented by this expropriation.”
Thus, the trial judge rejected as untenable the testimony of the plaintiff-condem-nor’s appraisers to the effect that the expropriation caused no severance damage to the remaining portion of the property involved. Instead, he accepted the expert *374 opinions of the landowners’ appraisers, who testified that the alteration of the physical shape of the remaining property would lessen its value for the best and highest use for which it is suitable, namely, rural home-sites. Since this question is strictly a factual determination, we are unable to conclude that the judge in the lower court committed manifest error in accepting the testimony of one set of appraisers while rejecting the opinions advanced by the other set.
Thus, although counsel for plaintiff-con-demnor argues strongly that both the initial valuation of the subject property and the award of severance damages as to the remaining property are unsupported by legally sufficient evidence, we are inclined to the contrary view and, absent the necessary showing of manifest error on the trial judge’s part, we are of the opinion that his decision should be affirmed in all respects.
For the foregoing reasons, therefore, the judgment of the lower court is hereby affirmed, plaintiff-appellant to bear all costs.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied. ■