215 So.2d 114

**COLUMBIA GULF TRANSMISSION COMPANY**

v.

**Obie F. HOYT.**

No. 49461.

Aug. 26, 1968.

Rehearing Dismissed Sept. 24, 1968.

William C. Broadhurst, Edwards, Edwards & Broadhurst, Crowley, for relator.

Hargrove, Guyton, Van Hook & Ramey, Jones, Shreveport, Walker, Waechter, Poitevent, Carrere & Denegre, New Or-

leans, Sanders, Miller, Downing & Kean, Baton Rouge, Shotwell, Brown & Sperry, Monroe, Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, Oliver, Digby & Fudickar, Monroe, for amici curiae.

Guf Voltz, Jr., Voltz & Ware, Alexandria, for respondent.

HAMLIN, Justice:

In the exercise of our supervisory jurisdiction, we directed certiorari to the Judge of the Ninth Judicial District Court, Parish of Rapides, to review his judgment denying a preliminary injunction in the instant matter. Art. VII, Sec. 10, La. Const. of 1921.[1] Because of the urgency of the matter, the Court granted a special assignment.

The chronology of events are to the effect that on February 7, 1968, Columbia Gulf Transmission Company (Hereinafter designated as Columbia) entered into a "Right of Way and Servitude Agreement" with Minnie Glass Martin and Mary Glass Cain, the consideration being $197.14, whereby Columbia was given the right, among others, to lay its pipeline on three hundred acres of land situated in Rapides Parish owned by Mrs. Martin and Mrs. Cain in indivision with other parties.[2] On May 8, 1968, T. A. Glass, Jr., Louise Glass Sutton, and Janet Claire McInnis, also owners in indivision, executed similar agreements for a consideration of $98.57 each.

The agreements, supra, were contractual and granted a servitude to Columbia. Columbia did not expropriate the right of way, which it had a right to do if it could not have reached an accord with the proper parties.[3]

At the time the right of way was granted, the land was leased to Obie F. Hoyt. The

---

[1] The Court of Appeal refused to issue supervisory writs in this matter, stating: "For the reasons set forth in Michigan Wisconsin Pipe Line Company [v. Frugé], [La.App.], 201 So.2d 672, namely, because judgment rendered under our supervisory powers do not become executory until the delays for rehearing and application for writs of review have expired: This Court will not exercise its supervisory jurisdiction when, due to the element of time, any judgment which might be rendered by it could not become effective in time to afford relator the relief sought." See, also, id., 250 La. 1043, 201 So.2d 870; 250 La. 1035, 201 So.2d 655.

[2] The land was described as: "300 acres, being Lots 4 & 5 of Class 1 of the Woodland of the Partition of the Tanner Estate in Sections 22, 46 & 47, T 1 N, R 2 E, as per plat of said lots, copy of which is attached to original instrument #159740; less the tract of 100 acres off the southern end of said lots sold to Hoyt."

[3] LSA–R.S. 19:1 provides: "As used in this Part, the term 'property' means immovable property, including servitudes."
LSA–R.S. 19:2(7) provides: "Where a price cannot be agreed upon with the owner, any of the following may expropriate needed property:
"(7) Any domestic or foreign corporation created for the piping and marketing of natural gas for the purpose of supplying the public with natural gas;"

lease is dated September 29, 1964, and recites in part:

"This lease includes all of the surface rights together with all of the water rights not previously granted, it being specifically agreed and understood that the lessors retain the exclusive rights to the oil, gas and other minerals and all sub-surface rights other than the water rights not previously granted by the lessors.

"This lease shall be for a term of ten years beginning on the 1st day of November, 1964, and terminating on the 31st day of October, 1974, unless extended as hereinafter provided.

"As part of the consideration for this lease the lessee agrees to pay to lessors the sum of One and no/100 ($1.00) Dollars per acre per year as rent, said payment of rent to be made in advance of the beginning of each lease year. The lessee has this day paid to the lessors the sum of Four Hundred Dollars representing the payment of rent in advance for 1 (one) years.

" *   *   *

"The lessors herein do hereby grant unto the lessee the exclusive right and option to renew this lease for the same terms and conditions and for the same consideration herein expressed, for a period of ninety-nine (99) years.

" *   *   *

"The lessee herein shall have the right to sublease and/or assign this lease in whole or in part without the necessity of obtaining the lessors' consent.

"This lease shall be binding upon the heirs, legatees, transferrees and assigns of both lessee and lessors.

"Lessor agrees that a first refusal, for any sale, be granted to Lessee on the above described property."

The lease filed in this Court was by authentic act and was signed by T. A. Glass, Minnie Glass Martin, Mary Glass Cain, and Obie F. Hoyt, and also by a Notary and two witnesses. It was duly recorded, and its existence and recordation are admitted by all parties to these proceedings.[4]

On July 25, 1968, Columbia filed a petition for expropriation against Obie F. Hoyt. (Suit No. 70, 913 of the Docket of the Ninth Judicial District Court) It prayed that "there be judgment rendered herein in favor of Plaintiff and against Defendant whereby the right of way and easement as described * * * be expropriated and adjudged to Plaintiff, all for the uses and purposes of Plaintiff * * * upon the payment by Plaintiff to Defendant of a fair and reasonable

---

4. The right of way and servitude agreements were signed and given by five owners in indivision; the lease was signed by three as lessors. No controversy is made with respect to the variance.

value or price for the damage as said defendant may sustain in consequence of the expropriation of said rights covering the land described in said petition and subject to defendant's surface lease." Trial was set for August 27, 1968. Before issue was joined, Columbia, on its own ex parte motion, dismissed the suit without prejudice on August 1, 1968.

Meanwhile, on July 31, 1968, Columbia filed suit against the lessee, Obie F. Hoyt, praying for a writ of injunction and for a restraining order. It alleged that it had acquired the right of way, supra, and "Notwithstanding the obtaining of said right of way and servitude agreement which have been properly recorded, from the owners of said property, defendant has refused petitioner, its agents or servants and employees, the right to go on said premises for the purpose of completing said pipeline and stands on said property defying all acts and threatening your petitioner, its agents or servants and employees and has additionally, through his attorney, Mr. Gus Voltz, advised that all necessary means would be invoked in order to keep the employees of Columbia Gulf Transmission Company or its contractors off this land."

A temporary restraining order restraining, enjoining, and prohibiting Hoyt, his agents, officers, servants, employees, or otherwise, from any way obstructing, hindering, or molesting Columbia, its agents, servants, or employees, in any way while constructing the pipeline over and across the involved property issued on July 31, 1968. Columbia posted bond in the sum of $5,000.00 and entered the tract and began preparations for the laying of its pipeline.

Hoyt was served with Columbia's petition and the restraining order and was ordered to show cause on August 9, 1968, why a preliminary writ of injunction in the form and substance of the temporary restraining order should not issue to be effective during the pendency of the proceedings.

On August 5, 1968, defendant, Obie F. Hoyt, filed a motion to dissolve the temporary restraining order. He averred, in part, that plaintiff did not state with particularity what immediate and irreparable injury, loss or damage, would result in the event the temporary restraining order were not issued; that if an immediate need were shown for a temporary restraining order—defendant denied the need—plaintiff's claim was caused solely by virtue of plaintiff's lack of diligence in pursuing the acquisition of necessary rights by negotiation or through legal proceedings; and, that despite repeated advice by defendant, plaintiff was attempting to accomplish by injunction the forceful taking of property rights from defendant where other legal means were available. A rule to show cause on Au-

gust 8, 1968 was issued and directed to Columbia.

On August 9, 1968, defendant answered the rule for the preliminary writ of injunction; his answer contained in substance the averments of the motion to dissolve the temporary restraining order. He also filed a reconventional demand in which he prayed for damages allegedly suffered during the time the temporary restraining order was in force.[5]

On August 8, 1968, the trial court rendered judgment sustaining the motion to dissolve the temporary restraining order. It also awarded Obie F. Hoyt $350.00 as damages by way of attorney's fees for the wrongful issuance of the temporary restraining order and reserved to him the right to claim such other damages as he may have sustained by the issuance of the restraining order, said rights to be asserted in other proceedings. In its reasons for judgment, the trial court stated, in part:

"It occurs to me that if the injunction is allowed to stand against Mr. Hoyt, that will allow Columbia to go over the property on which Mr. Hoyt has this lease and to do what it appears to me would be to circumvent the provisions of Article 1, Section 2, Louisiana Constitution, which provides that where a person is deprived of his property he must be paid compensation in advance to the taking.

"Now I understand the position of Columbia to be that Mr. Hoyt, the lessee of the property, does not have such rights which he could assert and keep Columbia off of the property. It's my opinion that under the law the holder of a lease does have such property rights which would permit him to require that that right be expropriated according to the general expropriation law. Now I refer to the case 'State [through] Department of Highways v. Cockerham,' [La.App.], 182 So.2d 786. * * *

" * * *

"On the basis of that case and the citations in that case, it is my opinion that the lessee does have a right which

---

5. Hoyt alleged that:

" * * * the said land cleared by Columbia Gulf Transmission Company during the period of the existence of the illegally obtained temporary restraining order is parallel to and adjacent to one side of an inland lake built by plaintiff-in-reconvention; that the clearing of the trees from this side of the lake damages the levee which retains the water on that side of the lake, leaves one side of the lake unprotected from wind which greatly reduces the value of the lake from the fishing standpoint, one of the purposes for which the lake was created.

"That as a result of the illegal issuance of the temporary restraining order and the said Columbia Gulf's illegally taking possession of the property leased by plaintiff-in-reconvention, your plaintiff-in-reconvention was forced to move his entire herd of cattle from that area over which he was enjoined to an area with insufficient grass and as a result has had to feed the cattle."

unless it is expropriated by Columbia Gas-Columbia Gulf Transmission Company, will effectively prevent Columbia Gulf Transmission Company from going across the property.

"If the injunction is allowed to stand, as I said before it appears to me that what the Court would be doing is to allow Columbia to circumvent the provisions of Article 1, Section 2—that I have just referred to. * * *"

On August 9, 1968, after trial on August 8, 1968, the trial court read and signed a judgment which denied the preliminary injunction and dismissed the rule at plaintiff's cost; it reserved to defendant the claims asserted in his reconventional demand. In reasons for judgment, the court stated:

"The reasons already stated in the Motion to Dissolve the Temporary Restraining Order, which motion was sustained by the Court earlier, for those reasons and also the following reasons, the Rule for Preliminary Injunction is discharged and dismissed.

"The additional reasons that the Court has reference to is that the Court finds that to allow the preliminary injunction would be to circumvent the provisions of Article 1, Section 2, that the opinion of the Court if any irreparable injury results to Columbia from the failure to go across the property which Mr. Hoyt holds a lease that that injury is due

to the fault of the plaintiff, Columbia, and not to anything that Mr. Hoyt might have done and if irreparable injury is due to the fault of Columbia by virtue of the fact that they made no allowance for delay in acquisitions for rights of way when they entered into the contract for the construction of a pipeline."

On August 12, 1968, the Court of Appeal denied Columbia's application for writs.

The present application for writs was filed on August 14, 1968, certiorari was granted on August 15, 1968, and the matter was heard on August 22, 1968.

Columbia contends that the rights acquired by it from the fee title owners of the subject property are sufficient to enable Columbia to install a pipeline across this property; and, that the surface lessee, who derived his title from the same fee title owners, has only a personal right by and between himself and the lessor, which right does not entitle him to interfere with the construction of the pipeline. It further contends that it is not a party to the contract of lease between Obie F. Hoyt and the fee title owners of the "Glass" tract and is not contractually bound by same. It argues that as surface lessee, respondent, Obie F. Hoyt, must seek his damages against the land owners and should be prohibited from disturbing Columbia's validly acquired rights.

The lessee, Hoyt, contends that his rights under the recorded lease constitute "property" within the intendment of Article I, Section 2 of the Louisiana Constitution and to allow the injunction would permit Columbia to appropriate or damage these rights without advance compensation in violation of the constitutional safeguard.

Article I, Section 2 of the Louisiana Constitution provides:

"Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid." [6]

■ The foregoing provision applies to "the intentional or purposeful expropriation or appropriation of private property for a public use or convenience." See Angelle v. State, 212 La. 1069, 34 So.2d 321, 2 A.L.R.2d 666. Under this provision, property is "taken" when the public authority acquires the right of ownership or one of its recognized dismemberments. See Parish of Jefferson v. Texas Co., 192 La. 934, 189 So. 580; 2 Nichols, Eminent Domain, § 6.1 [1] (3d ed. rev. 1963); 24 La.Law Rev. 849, 850–851. Property is considered "damaged" when the action of the public authority results in the diminution of the value of the property. Parish of Lafayette, etc. v. Hernandez,

232 La. 1, 93 So.2d 672; Texas Pipe Line Company v. Barbe, 229 La. 191, 85 So.2d 260; 4 Nichols, Eminent Domain, § 14.2 (3d ed. rev. 1963).

Concededly, Columbia proposes to build on the leased land a pipeline for the distribution of natural gas in other states. Columbia asserts, however, that a predial lease is not "property" within the meaning of the constitutional provision. It argues that in Louisiana a predial lease establishes only "personal rights", conveying to the lessee no interest in the land.

■ It is true Louisiana law, following the civil law tradition, classifies the lessee's rights under a predial lease as personal rights, as distinguished from real rights. These lease rights are described as rights *ad rem*, or upon the thing, since they include the right to use and enjoy the land. See Leonard v. Lavigne, 245 La. 1004, 162 So.2d 341; Harwood Oil and Mining Company v. Black, 240 La. 641, 124 So.2d 764; Reagan v. Murphy, 235 La. 529, 105 So.2d 210; Gulf Refining Co. of Louisiana v. Glassell, 186 La. 190, 171 So. 846; Yiannopoulos, Civil Law of Property, § 95, p. 277 (1966).

■ The constitutional designation *private property* is restricted to no particular type of private property. It is sufficiently broad, in our opinion, to include leases, though lease rights may be classified as

6. See also Article IV, Section 15, Louisiana Constitution.

personal in the structuring of our codal system.

■ It would have been an odd circumstance had predial lease rights, granting to a lessee the enjoyment of land and often quite valuable, been omitted from the constitutional safeguard to just compensation. The jurisprudence, however, leaves no doubt that for many years predial leases have been classified as compensable rights in land expropriations. See Municipality No. Two, For Opening Euphrosine Street, 7 La.Ann. 72 (1852). As early as 1880, in the case of In Re Morgan R.R. & S.S. Co., 32 La.Ann. 371, the Court awarded a lessee compensation for his lease in a land expropriation. Since then, the courts have consistenly awarded the lessee the value of his lease when the land is taken. State, Through Department of Highways v. Levy, 242 La. 259, 136 So.2d 35; State, Through Department of Highways v. Schnitt, 238 La. 1069, 117 So.2d 595; State v. Ferris, 227 La. 13, 78 So.2d 493; Board of Levee Com'rs Orleans Levee District v. Jackson's Estate, 113 La. 124, 36 So. 912; State, Through Department of Highways v. Cockerham, La.App., 182 So.2d 786, cert. denied 249 La. 110, 185 So.2d 219.

■ When land subject to a lease is taken for public use, the lease terminates. LSA–C.C. Art. 2697. Lease rights, however, may be damaged other than by ter-mination of the lease. If the land taking is partial only, such as in the acquisition of a servitude for a right of way, the taking may damage lease rights, though it does not render the land unusable for lease purposes or terminate the lease. See, generally, Comment, 24 La.Law Rev. 849, 873–875. These damages are also compensable to the lessee.

■ We conclude, as did the trial judge, that a predial lease is property within the meaning of Article I, Section 2 of the Louisiana Constitution. As such, it must be accorded constitutional protection, requiring just compensation to the lessee before the lease rights are damaged. See State Through Sabine River Authority v. Phares, 245 La. 534, 159 So.2d 144, and State ex rel. Cotting v. Sommerville, 104 La. 74, 28 So. 977. Since defendant holds a recorded lease upon the land, the trial judge correctly denied the preliminary injunction.

For the reasons assigned, the judgment of the trial court is affirmed; costs in this Court are assessed against the plaintiff.

FOURNET, C. J., concurs in the decree.

HAMITER and McCALEB, JJ., absent.

## ON APPLICATION FOR REHEARING

PER CURIAM.

After its application for rehearing, Columbia Gulf Transmission Company filed a brief in support of the application. Co-

lumbia advised the Court that the case had been compromised. It urged, however, that a rehearing be granted to reconsider the question presented, which though now academic is of great importance to the law of the state.

Since there is no longer a viable issue between the parties, the case is moot. Accordingly, we dismiss the application for rehearing. See Texas Pipe Line Company v. Stein, 250 La. 1104, 202 So.2d 266 (1967) and the authorities cited therein.