PICKETT, Judge.
The Parish of East Baton Rouge, being unable to amicably secure a portion of Lot 43 of Kean Place Subdivision, situated in the City of Baton Rouge, East Baton Rouge Parish, State of Louisiana, under lease by the owner, Violet A. Landrum, to Harco, Inc., a Louisiana Corporation, needed for the purpose of widening and improving a public road in East Baton Rouge Parish, known as the Prescott Road, instituted this proceeding under the authorization contained in Section 3.01(b) of the Plan of Government for the Parish of East Baton Rouge and the City of Baton Rouge. After issue was joined the case was tried, and the trial court adjudicated the land sought to be expropriated to the Parish of East Baton Rouge, upon the payment to Violet A. Landrum of the sum of $17,126.00, and upon payment to Harco, Inc. of the sum of $2,740.00, with legal interest on both sums from date of judicial demand until paid. Harco, Inc., has appealed devolutively.
It appears from the record that the owner, Violet A. Landrum, is satisfied with the award of $17,126.00 for the fee ownership of the property expropriated. She has not appealed. Therefore, it is unnecessary to review the evidence relative to the value of the property, except insofar as it may affect the rights of Harco, Inc., as lessee.
In the landmark case of Morgan R. R. and S. S. Company, 32 La.Ann. 371, the Louisiana Supreme Court had before it for determination the relative rights of the landowner, and the lessee of property expropriated for public use. In that case, the Court said:
“The Code, article 490, says: ‘Ownership is perfect when it is perpetual, and when the thing which is the subject of it is unencumbered with any charges toward any other person than the owner.’ It is imperfect * * * ‘if the thing which is the subject of it being an immovable is charged with any real right toward a third person, as an usufruct, use or service.’
“Perfect ownership gives the unlimited right of disposal and enjoyment. C.C. 491.
“Imperfect ownership gives these rights only ‘when it can be done without injuring the rights of others, that is of those who may have real or other rights to exercise upon the same property.’ C.C. 492. “The rights of use, enjoyment, and disposal are said to be the three elements of property in things. They constitute the jure in re. The right of a lessee is not a real right, i. e. a jus in re. In other words, the lessee does not hold one of the elements of property in the thing. His right is a jus ad rem, a right upon the thing. While therefore, technically, the lease of real estate does not operate a divestiture of any elements of property, it does by the express terms of article 492 C.C. prevent or encumber the exercise of the right of perfect ownership. That article says that not only real rights but ‘other rights’, vested in third persons, limit the exercise of full ownership. The right of a lessee is substantive, and is independent of changes in the ownership of the thing. C.C. 2733. The purchase or expropriation of the rights of the owner does not therefore necessarily embrace or operate upon the right of the lessee. That right in order to be affected must be itself the object of purchase or expropriation. If the rights of the owner are alone the objects of the purchase or expropriation, the right of lease is unaffected and continues. The purchaser gets only the thing encumbered by the lease. That is all he can get, for that is all the owner has. In other words, the purchase or expropriation of the owner’s rights gives simple subrogation thereto, no more, no less. *217 This of course gives the right to take any sums, falling due, in future, for rents of the thing.”
In the case of Columbia Gulf Transmissions Co. v. Obie T. Hoyt, 252 La. 921, 215 So.2d 114, the Supreme Court of Louisiana held that predial lease is “property” within the meaning of the Constitutional provision that private property shall not be taken or damaged except for public purpose and then after just and adequate compensation is paid, requiring just compensation to lessee, before lease rights are damaged. See LSA-Const. Art. 1, Section 2.
The issue before the Court is whether or not the expropriation of the property on which Harco, Inc., the appellant, had a lease, has caused it to suffer any damages as a result of the taking of a portion of the leased property; and if the lessee is entitled to damages, should such damages be paid by the expropriating authority, or by the landowner.
In the Morgan R.R. and S. S. Company, supra, the Court held that the expropriating authority could only take from the owner what the owner had, and that the owner should be paid only for what was taken from him. The right of the lessee was a substantive right vested in him and did not belong to the owner of the land. Therefore, the acquisition of the lease could only be derived from and through the lessee. The Court, also, held that if the right of the lessee was no more than it had agreed to pay for the lease, lessee would be entitled to nothing for future rents for which it had paid nothing. But if this right is worth more than the lessee had agreed to pay for it, the lessee is entitled to be paid the excess. In other words, the lessee is entitled to be paid the value of the right which is taken from it.
The appellee contends that it could have subleased the premises to a major oil company for a substantial lease advantage except for the eminent expropriation. The trial court rejected this argument on the ground that no lease advantage existed under the circumstances. We concur in the trial court’s finding in this regard, and concur in the following Reasons for Judgment rendered by the trial court, from which we quote approvingly as follows:
“The Court is satisfied that at the time the contract of lease was executed, the construction plans for the Prescott Road project were incomplete, and the exact nature and extent of the proposed taking was unknown. Therefore, while the public in general, and the defendant-lessee in particular, may have possessed ‘general knowledge’ of the proposed improvement, the Court must take cognizance of the fact that during the interim between the announced improvement and the commencement of expropriation proceedings, the expropriating authorities might well have modified their initial plans. For this reason, absent ‘bad faith’, such ‘general knowledge’ does not constitute a bar to the assertion of rights validly acquired by landowners and lessees in property which may later become subject to condemnation. See State, Department of Highways vs. Vermillion [Vermilion] Develop. Co., 258 La. 159, [1159], 249 So.2d 167 (1971)
“Certain risks are attendant the acquisition of property during a pre-expropriation interim, however, and the defendant-lessee was surely cognizant of one of these risks. The paramount risk confronting the defendant-lessee was, of course, the risk that a later expropriation might take such a portion of the subject corner that it could no longer be subleased to an oil company for development into a service station site. There can be no question but that prospective sublessees were also cognizant of this risk, as evidenced by their consistent refusal to execute a sublease with the defendant-lessee.
“Because of the uncertainty occasioned by this cloud of possible expropriation, the defendant-lessee secured the subject property with a twenty year lease in the event *218 the property retained its utility, and then prudently included an ‘escape clause’ in the event expropriation reordered the property useless for its purposes. The provisions of this cause read:
“If the demised premises or any part thereof shall be taken by or pursuant to governmental authority or through exercise of the right of eminent domain, or if a part only of said premises is taken and the balance of said premises in the opinion of said Lessee is not suitable for the operation of its business, or the business of its assigns, this lease, at the option of the Lessee, shall terminate without further liability on the part of Lessee, or the rent thereunder shall be reduced in proportion to the reduction in the area of the premises, but nothing herein shall be deemed a waiver of the right of Lessee to any award for damages to it or its leasehold interest caused by such taking, whether made separately or as a part of the general award.”
“By the simple inclusion of this stipulation, therefore, the defendant-lessee was assured that its maximum exposure to financial loss would be limited to the rents expended up to the time it elected to rescind the lease contract. But, foregoing the right to invoke this option, defendant-lessee instead chose to assert the argument that the highest and best use of the subject property immediately prior to the proposed taking was that of a major service station site, and that as a consequence, the plaintiff owes compensation for the destruction of that highest and best use.
“The Court finds that this argument must fall of its own weight. The simple fact of the matter is that if the highest and best use of the subject property immediately prior to the proposed taking was that of a major service station site, it must be presumed that a sublease to that effect could have been consummated. Yet, as mentioned above, the cloud on the future utility of the property for this purpose prevented any such transaction. In this connection, it is important to recall the fact that defendant, Harco, Inc. executed the lease with full knowledge of the contemplated improvements, and it was this same knowledge, shared by others, that subsequently prevented the subject property from being subleased. The defendant-lessee, therefore, is certainly in no position to now complain it has been damaged in this respect.
“In sum, the argument advanced by the defendant-lessee merely begs the question. While the testimony of the defendant-lessees expert appraisers amply supports a conclusion the subject property would have been an excellent service station site but for the expropriation or the threat of expropriation, this is not a fact of which the Court can take cognizance. The decisive issue before the Court is the value of the highest and best use as of the date the expropriation proceedings were commenced, and not what the highest and best use might have been absent expropriation or the threat of expropriation.
“At this juncture, the Court hastens to add that the ‘general knowledge’ of the proposed project possessed by the defendant-lessee is not in any way controlling in the findings announced above. What is controlling, however, is the fact that as evidenced by the ‘escape clause’ in the lease contract, the defendant-lessee was fully cognizant of the risks attendant its venture, and yet, not being satisfied with having so minimized its risks, seeks in this suit compensation for rights which never existed. The difficulty with this position becomes even more apparent when one observes that if the defendant-lessee has elected not to cancel the lease, it is putting itself into the inconsistent posture of saying to its lessor that the subject property is still suitable for. its purposes, and yet at the same time contending in this law suit that the subject property is not suitable for its purposes. On the particular facts presented, therefore, to find that the highest and best use of the subject property as of the date the expropriation proceedings were commenced was that of a service station site, and award compensation therefor, the Court would have to ignore the reali *219 ties of the situation at bar, and grant judicial absolution from the speculative risks which naturally followed the instant lease transaction. The Court simply cannot be so cast as the guarantor of business success.
“The simple answer to defendant-lessee’s argument that it is entitled to substantial damages to its leasehold interest because of the destruction of the possible use of a major oil company service station sight is that such leasehold advantage never existed prior to expropriation. Defendant’s experts simply made their calculations from a false major premise. However, one of the plaintiff’s experts testified that the total value of the land taken was Nineteen Thousand eight hundred sixty-six and no/100 ($19,866.00) Dollars. With this the Court agrees. The landowner stipulated that the value of owner’s interest was Seventeen thousand one hundred twenty-six and no/100 ($17,126.00) Dollars. Using another approach, the difference between these two figures must be ascribed to the leasehold advantage. Therefore, the Court will award to defendant, Harco, Inc., the sum of Two Thousand seven hundred forty and no/100 ($2,740.00) Dollars, together with legal interest thereon from date of judicial demand, until paid.”
We are convinced that the lessee who was a knowledgeable and sophisticated real estate dealer, was fully informed, and aware, or should have known, that the probability of the taking of the leased premises, or a portion thereof, for the purpose of widening the street, would affect the desirability of the property as a major oil company gasoline station site. We think the trial court’s Reasons for Judgment fully and capably dispose of the issues raised by appellant and adopt them as our own.
For the reasons hereinabove set forth, the judgment appealed from is affirmed. Costs of this appeal are assessed to Harco, Inc., defendant-appellant.
Affirmed.