KNOLL, Judge.
Lenis and Glory Veillon appeal the dismissal of their claim for damages against the City of Lafayette. The Vedlons’ home is located in an area through which a proposed major transportation project is routed. The Veillons sued the City of Lafayette seeking to enforce verbal communications that they would be relocated, and that the delay of 2h years in relocating them constitutes a “taking” of their property without compensation. The trial court held that there has not been a “taking” of the Veillons’ property, and that there was no written agreement wherein the City of Lafayette agreed to purchase the Veillons’ immovable property. The Veillons have perfected two assignments of error specifying that the trial court erred in: (1) failing to find that the City of Lafayette breached its oral agreement to purchase the Veillon home and relocate them; and (2) failing to find the City of Lafayette violated the Veil-lons’ constitutional right to compensation for the taking of their property. We affirm, finding the City of Lafayette’s actions failed to constitute a “taking” of property, and further that the Veillons had no legally enforceable agreement in which the City of Lafayette agreed to purchase their home and relocate them.
FACTS
Shortly before January 1981 the City of Lafayette planned a major transportation project to cross the Vermilion River. This project, known as the Camellia Boulevard Project, involved the widening of Guilbeau Road and connecting it to Camellia Boulevard which would be' converted to a four-lane thoroughfare.
The Veillon home is located at 409 Camellia Boulevard. In February 1981 the Veillons learned that the Camellia Boulevard Project would possibly require the taking of their property. In response to this news, Mr. Veillon requested and attended three meetings with the mayor of Lafayette and members of his staff.
The first meeting was held in February 1981 at the mayor’s office. The mayor informed Mr. Veillon that the project would encompass his home, but that the Camellia Boulevard Project depended on the April 4, 1981, bond election. On the afternoon of the first meeting Ronald J. Keddy, Lafayette’s chief right-of-way agent, came to the Veillon home, answered the Veillons’ questions about the relocation process generally, and gave them a city publication which provided an overview of relocation procedures.
A second meeting was held at the may- or’s office several weeks before the bond election. Mr. Veillon met with Mayor Las-trapes, Patrick Logan, the head of the city’s Capital Improvement and Development Department, Tony Tramel, the City Transportation Engineer, and Ronald Ked-dy. Mr. Veillon informed them of the concern he and his wife had about losing their home; however, he advised the city that they were not opposed to the Camellia Boulevard Project. They openly discussed advance acquisition of the Veillon home. The mayor told Veillon it was permissible to look for a new home.
The third meeting between Mr. Veillon and the mayor was held shortly after the April 4, 1981, bond election which passed. *186 By May 4, 1981, the Veillons notified the mayor by letter through a local real estate agent that they had located a comparable home. The mayor advised the Veillons that advance acquisition of their Camellia Boulevard home could not be accomplished.
No further meetings were held between the Veillons and the city administration. Mayor Lastrapes informed the Veillons by letter dated May 16, 1983, that their Camellia Boulevard home would be taken within three years in connection with the Camellia Boulevard Project.
PURCHASE AND RELOCATION
The Veillons argue that the city agreed to purchase their home and relocate them if the bond election funding the Camellia Boulevard Project passed.
Parol evidence is not admissible to prove an agreement to sell immovable property. LSA-C.C. arts. 1832, 1839, 2440, and 2462. A party cannot recover damages for the breach of an oral agreement to sell immovable property. Manuel v. Moity, 313 So.2d 278 (La.App. 3rd Cir.1975), writ denied, 318 So.2d 48.
There has been no written agreement between the Veillons and the City of Lafayette to purchase their home. Meetings have been held between the parties to discuss the impact and procedure of the relocation of the Veillons’ home. No written or oral agreement has been reached between the parties concerning the price of the Veillon home; therefore, not even the basic requisite for a contract of sale has been established. LSA-C.C. art. 2456. The Lafayette City Council has never been involved in any formal action regarding the purchase and relocation of the Veillons’ home. Although the mayor advised the Veillons to look for a new home because theirs would be encompassed in the street improvement project, and sent city personnel to their home to explain relocation procedures, a formal resolution by the city council necessary for the approval of the purchase had never taken place. See LSA-R.S. 33:401. Therefore the trial court correctly held that the Veillons had no agreement with the City of Lafayette to purchase their property and relocate them.
EXPROPRIATION
The Veillons argue that the actions of the mayor of the City of Lafayette has deprived them of their constitutional rights to enjoyment of their property. Specifically they allege that their property has decreased in value from $130,000 to $75,000, and that this loss constitutes a “taking” of their property.
LSA-Const. Art. 1 § 4 provides in pertinent part:
“Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property_
Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit_
LSA-Const. Art. 1 § 2 provides:

“No person shall be deprived of life, liberty, or property, except by due process of law.”

U.S.Const. amend. XIV reads in part: “... nor shall any State deprive any person of life, liberty, or property, without due process of law; ...”
U.S.Const. amend. V states in part:
“... nor shall private property be taken for public use, without just compensation.”
Although our research has failed to turn up an interpretation of what constitutes a “taking of property” under the Louisiana Constitution of 1974, prior jurisprudence has consistently held that “... property is ‘taken’ when the public authority acquires the right of ownership or one of its recognized dismemberments.” Columbia Gulf Transmission Company v. Hoyt, 252 La. 921, 215 So.2d 114 (1968); see also Culotta v. Police Jury of Ascension Parish, 316 So.2d 463 (La.App. 1st Cir.1975), writ denied, 320 So.2d 561. Clearly, the Veillon property has not been “taken” as envisioned under LSA-Const. art. 1, §§ 2 *187 and 4 because all of the elements of ownership are vested in the Veillons.
The Veillons argue nonetheless that the city’s pre-expropriation activities constitute a taking because the threat of expropriation has prevented them from using and enjoying their property.
In Agins v. City of Tiburon, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980), the Court noted that the municipality’s good-faith planning activities, which resulted in the abandonment of eminent domain proceedings, did not so burden the property owner’s enjoyment of their property as to constitute a taking. Furthermore, citing Danforth v. United States, 308 U.S. 271, 60 S.Ct. 231, 84 L.Ed. 240 (1939), the Court said that fluctuations in land value during the process of governmental decisionmak-ing, absent extraordinary delay, are incidents of property ownership, and cannot be considered as a “taking” in the sense embodied in the V and XIV amendments. See also Allain-Lebreton Co. v. Dept. of Army, Etc., 670 F.2d 43 (5th Cir.1982).
The Camellia Boulevard Project is a large undertaking important to Lafayette’s transportation program. The project is estimated to cost between nine and ten million dollars and requires the sale of bonds. As with any large municipal capital improvement delays are expected. In this instance such delays have been caused by: (1) an additional feasability report which was ordered to study alternate routes proposed by residents on or near Camellia Boulevard; (2) the need to obtain a Coast Guard permit to construct a bridge across the Vermilion River; and (3) a depressed. bond market which has restricted the availability of funds. The Veillons have failed to establish that these delays are so extraordinary or unreasonable as to constitute a “taking” as averted to in Danforth, supra. Therefore the trial court was correct in its finding that the Veillons had not established a taking of their property as is protected by the V and XIV amendments to the U.S. Constitution.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs are assessed to plaintiffs-appellants, Lenis Veil-Ion and Glory Veillon.
AFFIRMED.