TOBIAS, J.,
concurs in the result and assigns reasons.
| I respectfully concur in the result.
As stated by the Louisiana Supreme Court in Avenal v. State, 03-3521 (La.10/19/04), 886 So.2d 1085:
We find it unnecessary to conduct the full [State Through Dept. of Transp. and Development v.] Chambers analysis, which seeks to determine whether a plaintiff is entitled to eminent domain compensation because his private property has been taken or damaged for public use. In this case, the relevant consideration is whether plaintiffs’ property was “taken” for a public purpose, or whether it was “damaged” for a public purpose. A distinction between a taking and a damaging is necessary because of the existence of two relevant prescription statutes, La. R.S. 13:5111 and La. R.S. 9:5624. Section 5111 of Title 13 is entitled “Appropriation of property by state, parish, municipality or agencies thereof; attorney, engineering and appraisal fees; prescription” and provides in pertinent part: “[A] proceeding brought against the state of Louisiana ... or other political subdivision ..., for compensation for the taking of property by the defendant, other than through an expropriation proceeding, ... shall prescribe three years from the date of such taking.” Section 5624 of Title 9 pro *86 vides: “When private property is damaged for public purposes any and all actions for such damages are prescribed by the prescription of two years, which shall begin to run after the completion and acceptance of the public works.” Thus, although the Louisiana Constitution provides that just compensation shall be paid when property is taken or damaged, La. R.S. 13:5111 provides a three-year prescriptive period for takings and La. R.S. 9:5624 provides a two-year prescriptive period for damage. A.K. Roy, Inc. v. Board of Commissioners for Pontchartrain Levee District, 237 La. 541, 547-48, 111 So.2d 765, 767 (1959) (Prescriptive | speriod of La. R.S. 9:5624 applies only when private property is damaged for public purposes, but not actions for recovery of private property taken for public purposes).
The distinction between a taking and a damage claim was made in a case in which a holder of a predial lease invoked property rights pursuant to the 1921 Constitution. Columbia Gulf Transmission Co. v. Hoyt, 252 La. 921, 215 So.2d 114 (1968). In that case, the Court found the lessee’s rights under a predial lease fell under the constitutional designation of “private property” in Art. I, § 2 of the 1921 Constitution and required just compensation to the lessee before the lease rights were damaged, even though Louisiana codal law classified a lessee’s rights as personal rights. However, as particularly relevant to this case, the Court distinguished the terms “taken” and “damaged” in Art. I, § 2. The Court stated that “property is ‘taken’ when the public authority acquires the right of ownership or one of its recognized dismemberments.” 215 So.2d at 120. “Property is considered ‘damaged’ when the action of the public authority results in the diminution of the value of the property.” Id.
03-3521 at pp. 27-29, 886 So.2d at 1104-05.[1]
From the foregoing, it appears that the majority’s analysis of the case at bar as one in inverse condemnation (appropriation) is incorrect; the case is one of damages subject to the provisions of La. R.S. 9:5624. The distinction between the two concepts is, in my view, immaterial in this case because the result is the same, to-wit, the plaintiffs suffered damages as a result of a public work.
With respect to the issue of damages, I cannot say that the majority erred in its awards. However, I reiterate my opinion, expressed in Grefer v. Alpha Technical, 02-1237, pp. 3-5 (La.App. 4 Cir. 3/31/05), 901 So.2d 1117, 1155-56 (Tobias, J„ concurring on rehearing),[2] writ denied, 05- *88 1590 (La.3/31/06), 925 SoJ,2d 1248,[3] that there exists a tension between the Supreme Court cases of Roman Catholic Church of Archdiocese of New Orleans v. Louisiana Gas Service Co., 618 So.2d 874 (La.1993) and Corbello v. Iowa Production, 02-0826 (La.2/25/03), 850 So.2d 686, which ought to be resolved by the Supreme Court. The case at bar presents a vehicle through which the Supreme Court might clarify the matter.

. For further amplification and discussion of the issue, see Avenal v. State, Dept. of Natural Resources, 01-0843, pp. 42-59 (La.App. 4 Cir. 10/15/03), 858 So.2d 697, 732-741 (Tobias, J., dissenting), rev'd. 03-3521 (La. 10/19/04), 886 So.2d 1085.

. In pertinent part, my concurrence stated:
In our original opinion, we discussed at some length the cases of Roman Catholic Church of Archdiocese of New Orleans v. Louisiana Gas Service Co., 618 So.2d 874 (La. 1993) and Corbello v. Iowa Production, 02-0826 (La.2/25/03), 850 So.2d 686. However, we did not fully discuss the tension between them, which, in my view, makes the juiy’s determination of compensatory damages neither manifestly erroneous nor clearly wrong. In a supplemental application for rehearing, Exxon cites this court to Hornsby v. Bayou Jack Logging, 04-1297 (La.5/6/05), 902 So.2d 361 ..., a case decided by the Supreme Court while Exxon’s application for rehearing in this case was pending before this court.
Corbello is a contract case decided by the Louisiana Supreme Court after the appeal in the case at bar was docketed in this court. Roman Catholic Church is not a pure tort case. Underlying the recovery in Roman Catholic Church is the Church’s *87 contractual obligation to the U.S. Department of Housing and Urban Development ("HUD”) that required the Church to operate the property for low-income individuals for a fixed period of time, in default of which ownership of the property would ré-vert to HUD. Thus, I find that it is reasonable to read the two cases in pari materia. Whereas, the Grefers' claims against ITCO sound in both contract and tort, their claims against Exxon are in tort.
In Roman Catholic Church, at the time of suit the Church had already expended a very substantial sum to restore the property. In context, that was reasonable. In Corbello, the plaintiff had not expended anything, yet was allowed to recover $33 million without any obligation to spend anything to restore the damaged thing. As I read Corbello, where the restoration (remediation) is contractual the restoration costs may include apparently speculative costs without an obligation to expend the money to restore, but where the remediation costs are tort based, only actual sums expended can be considered.
If the Supreme Court in Corbello read out of the contract at issue therein the word "reasonably,” how can we find an award of $56 million by the jury is unreasonable?
We found that the Grefers had "both personal and economic reasons for wanting to restore their property to its original condition.” We reached this conclusion, relying upon Judge Grefer’s statements that (a) "he and his siblings want to restore the property, which has been in the Grefer family since 1875, to its original condition and not to the mere minimum DEQ standard”; (b) he and his siblings were "unable to sell or lease the contaminated property without exposing themselves to liability and they do not want to burden their children with this”; and (c) he expressed "grave concern about the effects the radioactive contamination might have on the neighbors and the general public.” A trier of fact has the right to weigh that testimony and give it such weight as deemed appropriate.
One might assert that Judge Grefer was framing his answers to questions propounded to come within the ambit of Roman Catholic Church’s personal-to-the-owner test, ignoring the language in the case referring to the "homestead”, i.e., one's personal dwelling (which is not the case of the Gre-fers). But again, this falls to the trier of fact to weigh and evaluate.
In my view, the Supreme Court’s standards for recovery must be understood in the context of the whole body of the law respecting recovery of damages. Among these are the doctrine of waste and the reasonable person. How can we conclude in light of the damage award in Corbello ($33 million to remediate a property having a value of $108,000) that the $56 million award is unreasonable? One might argue that the Grefers will remediate the property down to levels that make it commercially viable and usable, i.e., levels within the guidelines of the Louisiana DEQ and/or levels that will satisfy a financial institution that it can safely lend money on the property without the exposure of having to remed-iate the property at substantial cost should the property come into the financial institution's ownership by virtue of foreclosure. But is that difference in dollars not a justified award? The plaintiffs will likely expend substantial sums in defense of third party claims and responding to any awards of damages.
Hornsby is distinguishable on its facts. The case addresses damages for the improper cutting of trees, where a special statute specified what damages were recoverable and the penalties associated therewith. In my view, a material difference exists between cutting of trees and contamination from radioactivity. A landowner can sell his property without trees on it, and the value of the land may be reduced because of the absence of the trees. However, land contaminated with radioactivity at a level which makes the land unmarketable or undevelopable because no financing entity will loan money thereon as discussed above, is something that is certainly very personal to the owner when the contamination is caused by a third person. Thus, Judge Grefer’s testimony to the effect that he and his family are unable to sell or lease the contaminated property without exposing themselves to liability is something that comes within the ambit of something personal to the owner. Superimpose on this that, unlike Roman Catholic Church where the Church had the financial resources to repair the damage, the Grefers are apparently without the financial resources to remediate their property without first recovering the funds to do so. Is not the jury's determination in this case reasonably within their discretion?

. As of the date of the issuance of this opinion, the Grefer case is pending before the United States Supreme Court on application for a writ of certiorari. Exxon Mobil Corp. v. Grefer, no. 05A981, stay denied,-U.S.-, 126 S.Ct. 2056, 164 L.Ed.2d 777.