521 So.2d 829 (1988)
SOMA ENTERPRISES, INC., Plaintiff-Appellant,
v.
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, Defendant-Appellee.
No. 19,409-CA.
Court of Appeal of Louisiana, Second Circuit.
February 24, 1988.
Writ Denied April 7, 1988.
Wayne J. Blanchard, Shreveport, for plaintiff-appellant.
Bertrand & Soileau by Ronald J. Bertrand, Rayne, for defendant-appellee.
*830 Before MARVIN, JASPER E. JONES and NORRIS, JJ.
MARVIN, Judge.
The lessee under a written, but unrecorded, lease appeals a judgment dismissing, on an exception of no right of action, lessee's demands that the State DOTD pay "just compensation" under LSA-Const. Art. 1, § 4 "for the taking of [the lessee's] leasehold interest" as a part of the right-of-way of Interstate Highway No. 49 through Shreveport. The property was purchased from the owner by the State for inclusion in the I-49 right-of-way.
We reverse and render judgment overruling the exception of no right of action.

OTHER STIPULATED FACTS
The trial court stated the issue as whether the plaintiff has a right of action for property taken as a result of the State's purchase of title from the landowner in advance of expropriation. The litigants stipulated that the State would have expropriated the property had it not successfully negotiated for its purchase and that the State was aware of the lease and lessee's occupancy when the property was purchased. The stipulation stated the issue as whether the lessee "has any right of action against the State ..."

THE LEASE IS "PROPERTY"
The trial court recognized that an unrecorded lease is "property" within the meaning of LSA-Const. Art. 1, § 4. State Dept. of Transp. & Development v. Jacob, 483 So.2d 592, 594 (La.1986) and authorities cited therein.
The trial court reasoned, however, that there was no constitutionally contemplated "taking" when the State purchased the leased property for public use. The court said the statutory and case law deemed "the unrecorded lease has no effect on a purchaser, who [even with actual knowledge of the unrecorded lease] is entitled to rely solely on the public records." LRS 9:2721, 2756; Michigan Wisconsin Pipe Line Company v. Walet, 225 So.2d 76 (La. App. 3d Cir.1969), writ denied.
At this juncture, we observe that the State's reliance on its title is not at issue. We agree the State is protected by the public records doctrine as is any purchaser. This agreement, however, does not resolve the issue.

THE JACOB CASE
In Jacob, supra, a lessee under an unrecorded lease was allowed to intervene after expropriation and assert a claim for the damages it sustained by reason of the State's expropriating the leased property from the owner for highway purposes. The State there, as here, asserted that the lessee under an unrecorded lease had no right of action against the State for the constitutional compensation because the unrecorded lease did not affect the State. The State there relied on the same authority it relies on here.
Jacob noted that it was deciding only the issue before it (whether the unrecorded leasehold was "property" which the State had "taken or damaged") and was not considering the question which is here presented.
Squarely holding that the public records doctrine was not at issue, the court said: "Where the State uses its power to expropriate... it is governed not by the rule of the civil law, but instead by the restrictions of the Constitution." Recognizing that the unrecorded lessee had a right of action for the constitutionally contemplated compensation, the court broadly stated: "To the extent that any statute might be applied to operate to [preclude] this effect, it is operating in an unconstitutional manner." 483 So.2d 595.
Jacob observed that the public records doctrine was not "without effect" because the State could rely on the public records and acquire title under the quick-taking expropriation statute without naming the unrecorded lessee as a defendant. Supra, p. 596.

"PROPERTY TAKEN OR DAMAGED"
We agree that the property was not "taken" in the strict context of the State having *831 exercised its power of eminent domain in an expropriation action against the landowner. We are required to interpret the right of a person to be justly compensated for property that is "taken or damaged by the state ... for public purposes and with just compensation paid to the owner or into court for his benefit." LSA-Const. Art. 1, § 4.
The quoted provision is not new to Louisiana. See U.S. Const.Amend. V; LSA-Const. 1921, Art. I, § 2. The interpretation of the language under consideration has been consistent. Under this or the prior Louisiana constitution, property is considered as "taken" when the public authority acquires the right of ownership. Columbia Gulf Transmission Company v. Hoyt, 252 La. 921, 215 So.2d 114, 120 (1968), noted at 43 Tul.L.R. 714 (1969); State, DOTD v. Sugarland Ventures, Inc., 476 So.2d 970, 974 (La.App. 1st Cir.1985), writ denied. Our emphasis. Property is considered "damaged" when the action of the State results in the diminution of value of the property. See Hoyt, supra, 215 So.2d at 120. Our emphasis.

CONSTITUTIONAL PURPOSE
We are directed to interpret the constitutional provision fairly, and not in a strict or a liberal context. We also take due regard for the discerned purpose of the right stated by the provision. See Jacob, supra, and State ex rel. Guste v. Board of Com'rs., 456 So.2d 605, 609 (La.1984).
Jacob approved this summarization of the intent or purpose of LSA-Const. Art. 1, § 4:
Reference to "payment to the owner or into court for his benefit" was not meant to restrict the class of persons who could claim compensation to "owners" in a technical property law sense.... the term, as stated by the author of the final compromise, "is intended to be used in its broadest sense, in other words, a leasehold interest in land is a property right,... there's been some trouble over that in the past."
In fact, when one couples this intent with the requirement that compensation be to the full extent of one's loss, the purpose emerges of giving protection to a broader category of persons than was previously the case. It is also clear that by referring to property "taken or damaged" compensation must be given not only when ownership or a real right is taken, but also when property is damaged.
483 So.2d at 595, citing Professor Hargrave, 35 La.L.R. 1, 18. Paragraphs supplied.

CONCLUSION
Under the quick-taking statute, expropriation occurs and title vests in the State when the judge signs the ex parte order and the amount of the estimate of the owner's loss is deposited with the clerk. LRS 48:444, 445. Within a short time thereafter, the action is relegated to a contest over the adequacy of the deposit as just compensation for what was "taken or damaged."
The State is not protected by the public records doctrine from a demand for constitutional compensation by an unrecorded lessee after the fact of expropriation under the quick-taking statute. In such a situation the State would be required to make a hindsight evaluation of the leasehold in order to meet the demand for the constitutional compensation. Jacob, supra. The practical burden on the State after the purchase of right-of-way property, when faced with this demand for constitutional compensation arising out of an unrecorded lease, is no greater than in Jacob.
While Jacob distinguished the State-expropriator from the State-purchaser, we do not perceive any distinction in the legal and practical effect where the property is destined to be included in the highway right-of-way, either by expropriation by the State from the owner or by purchase by the State from the owner.
The State may acquire title from the owner in either event, confident in its reliance on the public records doctrine that the unrecorded lease will not affect its title.
*832 If the constitutional right of action exists on the one hand for the unrecorded lessee after the fact of expropriation, we see no reason why it should not exist for a reasonable time after the fact of the State's purchase of the property in lieu of expropriation.
In its written reasons for judgment the trial court stated that the
unrecorded lease has no effect on a purchaser who is entitled to rely solely on the public records.
This reasoning is essentially the reasoning of two dissenting opinions in Jacob, at 596. There, Marcus, J. dissenting, reasoned that
the constitutional requirement of ... just compensation ... does not affect an ownership interest not recorded. The non-recorded [lease] ... is null and void except between the parties ... The state's title dates from the filing of the suit and the deposit of the estimated value. Hence, the unrecorded lessee does not have a right [of] action for compensation against the state.
The framers of our constitution intended a lessee to be entitled to the just compensation, whether or not the lease is recorded. The term "payment to the owner or into court for his benefit" was not meant in the restrictive and technical property-law sense, but in its broadest sense. Jacob, citing Hargrave, quoted supra. Our emphasis.
We can agree with the dissents in Jacob only if we disregard the cited authorities and reason either that the unrecorded leasehold is not "property" or that the unrecorded lessee is not an "owner" within the constitutional contemplation. The authorities we have quoted and cited do not allow us this privilege.
The unrecorded lease is property and the lessee thereunder is an owner within the contemplation of Art. 1, § 4. Jacob, and authorities cited therein, supra. This property was "taken" by the State for a public purpose when the State acquired it for public use by purchase from the record title owner. This property is considered to have been "damaged" when the action of the State (recording its title and divesting both the lessor and lessee of any right of enjoyment) diminished the value of the property. Hoyt, supra, and authorities cited therein.
In the light of the authorities cited, we must respectfully disagree with the interpretation of the trial court. The plaintiff-lessee has a right of action for constitutional compensation.
We reverse and render judgment for the lessee overruling the exception of no right of action. We remand for further proceedings. Costs of this appeal, to the extent allowed by law, are assessed against the State.
REVERSED, RENDERED, AND REMANDED.