739 So.2d 977 (1999)
FRANKLIN SOUTHLAND PRINTING COMPANY, INC.
v.
The NEW ORLEANS AVIATION BOARD and The City of New Orleans.
No. 99-CA-60.
Court of Appeal of Louisiana, Fifth Circuit.
July 27, 1999.
*979 Ronald J. Vega, DeMartini, D'Aquila & Volk, Kenner, Louisiana, and Rebecca J. King, Paul J. Mirabile, Marlene Quarles, Alvin Moon, Middleberg, Riddle & Gianna, New Orleans, Louisiana, Attorneys for Defendants/Appellants.
Mack E. Barham, Jerry B. Jordan, Barham & Arceneaux, New Orleans, Louisiana, Attorneys for Plaintiff/Appellee.
Panel composed of Judges SOL GOTHARD, THOMAS F. DALEY and MARION F. EDWARDS.
GOTHARD, Judge.
Franklin Southland Printing Company, Inc. ("Southland") filed suit for inverse condemnation and appropriation of its leasehold interest and for damages against the New Orleans Aviation Board and the City of New Orleans ("NOAB"). Proceedings were instituted on December 12, 1995.
Plaintiff filed a motion for summary judgment on the issue of liability only on April 15, 1997. After hearing, on June 2, 1997, the trial judge rendered judgment in favor of plaintiff, establishing the liability of NOAB to pay just compensation to plaintiff. All issues related to the specific items and amount of just compensation were reserved for a trial on the merits.
NOAB filed for Motion in limine to prohibit evidence pertaining to damages allegedly incurred prior to September 5, 1996, the date of the purchase of the building and the termination of plaintiff's lease. This motion was orally denied by the trial court prior to the start of trial. A five day trial was held on August 13-15, 1997, September 26, 1997, and March 6, 1998. After taking the matter under advisement, the trial court rendered judgment in favor of plaintiff for a total amount of $1,300,038.40. No reasons for judgment were given by the trial court. NOAB appealed from this judgment.

FACTS
Richard Lizotte, president and majority stockholder, testified that he first took control of Southland Printing Company in 1991, and at that time the company was faltering. He began the process of turning the company around. In the beginning of 1992, he entered into a seven year lease with the owner of the R & S Building in Kenner. At that time, the building was located near the airport, in an area that was largely undeveloped.
In the fall of 1992, Southland purchased Franklin Printing Company. Included in the purchase was a Heidelberg Press. During that time period, Southland learned that the airport had future plans which would include appropriation of the property on which the R & S Building stood. He contacted the airport and inquired about relocation assistance, and was told that was not available until the building was purchased.
During the spring of 1993, Southland took steps to make the building suitable for the Heidelberg Press. The press was a large, vibration sensitive piece of machinery. Southland hired Gillen, who cut the slab under the press so that it was separate from the rest of the slab and sank 50 ft. pilings under the independent slab. By June 18, 1993, the Heidelberg Press was "up and running."
In early 1994, the airport began clearing and developing the property next to the R & S Building. With the use of bulldozers, graders, and dump trucks, fill was brought in and the elevation of the property was raised to where it would no longer flood. After the property was graded, the elevation was higher than that of the adjoining R & S Building.
In early 1994, Southland began to have problems with the Heidelberg Press. The maintenance company was called several times before the parties realized that the press was malfunctioning because of excessive vibrations. These excessive vibrations were attributed to the heavy equipment on the adjoining property and also to the addition of fill, which was pressing against *980 the pilings under the slab on which the Press sat, causing the pilings to move.
At that time, in the fall of 1994, Southland began a search for a place to relocate. After an extensive search, an appropriate piece of property was located in June of 1996, a lease was signed for a property on Catherine Street, near Airline Highway in Metairie, Louisiana. The property needed extensive work, estimated to be $550,000.00 to make it workable for the business. Mr. Lizotte testified that during this process he had been in contact with the airport, and he believed that he would get some relocation assistance.
In September of 1996, The New Orleans Aviation Board purchased the R & S Building, and gave Southland notice to vacate the premises. Mr. Lizotte testified that he was offered relocation assistance of around $162,000.00. Because the offer was insufficient to renovate the Catherine Street property, he was forced to terminate the lease. He stated that he was able to buy-out the lease from the owner for $53,000.00.
Mr. Lizotte located a building on 7 th Street, in Metairie Louisiana, which had formerly housed another printing company. This building had not been on the market at the time the Catherine Street lease was executed. After five months of searching, he was able to secure financing, and Southland executed a lease/purchase agreement in May of 1997. Renovations to the property started June 1, 1997, and the business began its move on July 31, 1997. During the first three days of trial, the move was still in progress. The estimated value of business loss caused by the move was $72,000.00.
Mr. Lizotte testified at trial that he continually sought assistance from defendants to help in the relocation of the business. His contact with defendant was Mr. Ellis Smith. Mr. Smith did not testify at trial.
David Demonte, CPA for Southland, testified that the value of the 1994 business disruption due to the downtime of the Heidelberg Press was $158,000.00. Ernest Folse, CPA, testified on behalf of defendants. He also found a business disruption in 1994 due to the malfunction of the Press, but he valued the loss at $98,000.00.
Dr. Kenneth Stokoe, an expert in civil engineering, soil dynamics, and foundation requirements for commercial printing presses, opined that disruption created by the malfunctioning Press and the ensuing financial loss was caused by the operation of the heavy equipment during the land clearing process, which caused vibration levels significantly above what the Press could tolerate. He also found that the placement of fill next to the R & S Building caused movement in the building's foundation.
Dr. Ewing Traughber, an expert in civil engineering, testified for defendants. He opined that the R & S Building was not suitable for the Press and that it was the heavy Press itself that caused the foundation problem. Roy Glapion, civil engineer, testified that the Press itself caused the vibration problems.
Dr. Wade Ragas was qualified as an expert in estimating losses as a result of a taking. He estimated the value of the leasehold taken by NOAB when the building was purchased at $311,000.00. He further opined that Southland had acted prudently during the relocation process.
On appeal, NOAB challenges specific findings and amounts of compensation. It is noted that the trial court, in its judgment, gave an in globo award, and did not specify each element of damage or the amount thereof. However, the plaintiff introduced as evidence at trial a document entitled "Summary of Just Compensation" which delineates each item of damage alleged. See Appendix # 1. The trial court's judgment is almost the same as that total amount alleged, and therefore the parties have treated this exhibit as a breakdown of the award given by the trial judge. To address NOAB'S allegations of error, we will do likewise.

*981 ANALYSIS
Louisiana appellate jurisdiction extends to questions of law and fact in civil cases. La. Const. of 1974, art. 5, §§ 5 and 10.
A trial court's findings of fact will not be disturbed unless the record establishes that a factual, reasonable basis does not exist and the finding is clearly wrong or manifestly erroneous. Where two reasonable views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Deference should be accorded to the factfinder; however, the courts of appeal have a constitutional duty to review the facts. The issue to be resolved by the reviewing court is not whether the trier of fact is right or wrong, but whether the factfinder's conclusion was a reasonable one. Daye v. General Motors Corp., 97-1653 (La.9/9/98), 720 So.2d 654, 658-9, and cases cited therein. This standard of review also applies to credibility determinations of expert witnesses. Lirette v. State Farm Ins. Co., 563 So.2d 850 (La.1990).
The proper standard for appellate review of questions of law is simply whether the court's interpretive decision is legally correct. If the trial court's decision was based on its erroneous interpretation or application of law, rather than a valid exercise of discretion, such an incorrect decision is not entitled to deference by the reviewing court. National Tea Co. v. Plymouth Rubber Co., 95-254 (La.App. 5 Cir. 10/18/95), 663 So.2d 801.
La. Const. of 1974, Art. 1, § 4 provides in pertinent part that:
Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into the court for his benefit ...... [T]he owner shall be compensated to the full extent of his loss.
In Packard's Western Store v. State, D.O.T.D., 618 So.2d 1166 (La.App. 2 Cir. 1993), writ denied 629 So.2d 345 (La.1993), the court set forth the general law relative to the damaging and/or taking of a lessee's leasehold and/or business losses:
The term "property" encompasses both tangible property and intangible property rights, such as the lessee's leasehold interest, even if unrecorded, and the landowner's right to develop his property. State Dept. of Transp. & Development v. Jacob, 483 So.2d 592 (La. 1986); State through DOTD v. Chambers Inv. Co., 595 So.2d 598 (La.1992).
Property is "taken" when the State acquires it for a public purpose, whether by amicable purchase from the owner or by an expropriation action. Soma Enterprises v. State, D.O.T. & Dev., 521 So.2d 829 (La.App. 2d Cir.1988), writ denied.

Property is "damaged" when the action or inaction of the State, in the exercise of its power to acquire property for a public purpose, diminishes the value of the tangible property or the intangible property right. Soma, supra; Columbia Gulf Transmission Company v. Hoyt, 252 La. 921, 215 So.2d 114 (1968); State, Dept. of Transp. v. Maynard, 565 So.2d 532 (La.App. 4th Cir.1990), writ denied. "Damage" to an intangible property right that occurs before the tangible property is taken is compensable upon proof that the State's action or inaction caused the damage. See and compare Maynard, supra, and State DOTD v. Brookhollow of Alexandria, 578 So.2d 558 (La.App. 3d Cir.1991), writ denied.

Under the 1974 constitution mandating compensation to "the full extent of [the] loss," a property owner must be put in as good a position pecuniarily as he would have been had his property not been taken or damaged. The State must compensate him for the loss he sustains because of the taking. This loss includes business losses. State through Dept. of Highways v. Constant, 369 So.2d 699 (La.1979).

*982 A lessee's business losses, if proved to have been caused by the State's taking or damaging of property, are compensable under the "full extent of the loss" measure of recovery. Constant, supra; Holland v. State, Dept. of Transp., 554 So.2d 727 (La.App. 2d Cir.1989), writ denied; State, Dept. of Transp. & Dev. v. Exxon Corp., 430 So.2d 1191 (La.App. 1st Cir.1983), writ denied.

* * *
The constitutional measure of recovery (full extent of the loss) is broader than the measure of tort recovery for negligent conduct (actual and reasonably foreseeable damages). See Peacock's, Inc. v. Shreveport Alarm Co., 510 So.2d 387, 407 (La.App. 2d Cir.1987), writ denied. The two awards that the jury made solely under the tort theory, loss of future profits and loss of leasehold advantage, represent losses that are compensable under the constitution if they are shown to be causally related to the State's taking or damaging of property. State, DOTD v. Dietrich, 555 So.2d 1355 (La.1990); State, Department of Highways v. LeBlanc, 319 So.2d 817 (La.App. 1st Cir.1975).
A lease is a compensable property interest under La. Const. of 1974, Article 1, § 4, when the State takes or damages property that is the subject of the lease. Further, the rights of the lessee are also protected when the lessee's property is "taken" by the State by amicable purchase from the landowner in lieu of expropriation. See Huckabay v. Red River Waterway Com'n., 27,113 (La.App. 2 Cir. 10/12/95), 663 So.2d 414, 420, writ denied, 95-3007 (La.3/8/96) 669 So.2d 403.
La. Const. of 1974, Article 1, § 4 has also been interpreted to allow compensation for economic losses. A claimant must prove, by a preponderance of the evidence, that an actual loss was sustained by the business because of the taking. Ardoin v. State, Dept. of Transp., 96-63 (La.App. 3 Cir.1996), 679 So.2d 928, writ denied, 96-2280 (La.11/15/96), 682 So.2d 775.
In its first allegations of error, NOAB argues that the trial court erred in awarding an amount for damages sustained by the lessee (plaintiff) before the purchase of the property from the owner in 1996. NOAB's argument is twofold. First, it argues that plaintiff, by the filing of the motion for summary judgment on the issue of liability for the taking as a result of the purchase of the property, waived its right to seek damages for activity prior to that sale and therefore the trial court erred in allowing plaintiff to introduce evidence to support those claims. Second, NOAB alleges that plaintiff did not present sufficient evidence to prove the amount of these damages.
Concerning NOAB's allegation that the trial court erred in failing to exclude proof of the damages sustained prior to the 1996 sale of the property because plaintiff waived its right to seek these damages, we note that this same issue was advanced by NOAB in a motion in limine filed and heard immediately preceding trial of this matter. At that time, the trial court denied the motion in limine to exclude the evidence of damages prior to 1996. NOAB sought a writ of review in this court, and this court denied relief. By this allegation of error, NOAB seeks a second review of this ruling by the trial court. However, we find that the doctrine of "law of the case" is applicable and we decline to consider this issue, which we had previously considered.
The "law of the case" is a doctrine whereby an appellate court will not reconsider its prior rulings on an issue in a subsequent appeal in the same case. The "law of the case" doctrine apples to previous decisions on writ applications as well as full appellate proceedings. Veazey v. Elmwood Plantation Associates, 625 So.2d 675 (La.App. 5 Cir.1993), aff'd, 93-2818 (La.11/30/94), 650 So.2d 712. This doctrine will not be applied in cases of palpable *983 error or when, if the law of the case were applied, manifest injustice could result. Vincent v. Ray Brandt Dodge, 94-291 (La. App. 5 Cir. 3/1/95), 652 So.2d 84, writ denied, 95-1247 (La.6/30/95), 657 So.2d 1034.
In this case, appellant presented no arguments which had not been previously presented by the motion in limine. We see no palpable error or manifest injustice as a result of our prior ruling, and therefore we will not reconsider the issue of the admissibility of the evidence of damages prior to 1996.
NOAB further argues that the trial court erred in its award for damages prior to 1996 because plaintiff failed to prove the damages occurred by a preponderance of the evidence. NOAB attacks the findings of Dr. Stokoe, alleging that they are not credible, and asserts that therefore plaintiff did not prove these damages by a preponderance of the evidence.
Credibility determinations, including the evaluation of expert testimony, together with the ultimate issue of whether a plaintiff has satisfied his burden of proof are factual issues to be resolved by the trier of fact and will not be disturbed on appeal in the absence of manifest error. Nicoll v. LoCoco, 97-83 (La.App. 5 Cir. 10/28/97), 701 So.2d 1062. We have reviewed the record before us and we find that the trial court acted within its discretion in accepting the testimony of Dr. Stokoe. We cannot say that the trial court was in error in concluding that the testimony, along with the other evidence presented, established by a preponderance of the evidence that plaintiff was damaged prior to the sale of the building in 1996.
In its next allegation of error, NOAB alleges that the trial court erred in awarding damages representing the amount of compensation received by Ray Lizotte for time spent in relocation.
When this matter came up to trial, the business was in the process of actually moving to its new location. At the trial, Mr. Lizotte testified that he had spent one-third of his working time from 1994 to the date of trial in searching for a new location and other related tasks. He further testified that one-third of his compensation during that time period was $92,500.00. Furthermore, the CPA testified this was the correct amount of compensation received by Mr. Lizotte during that time period. There was no evidence presented to show that this compensation was in addition to his regular salary, or that he would not have received this compensation had he not had to search for a new location. In addition, there was no evidence presented to show lost profits or other damages as a result of Mr. Lizotte's activities in searching for a new location, as opposed to performing other business duties. While plaintiff may recover its actual losses, here it presented no evidence to show that the salary paid to Mr. Lizotte would not have been paid had the search not been required, and therefore plaintiff has shown no actual loss as a result of Mr. Lizotte's activity in finding a new location for the business. Accordingly, plaintiff may not recover a portion of Mr. Lizotte's salary as damages in this case. We find that the trial court erred in awarding this element of damage.
NOAB next contends that the trial court awarded excess damages in that plaintiff failed to mitigate damages as required by law. NOAB contends that Southland failed to avoid the expense of moving the press from the R & S Building to the 7 th Street location. NOAB also contends that plaintiff erred in failing to avoid the expense of the Catherine Street lease buyout.
With regard to the Press, NOAB argues that because the plaintiff was aware an eviction was likely in the future, it should not have put the Heidelberg Press in the R & S Building in the first place, and thus, plaintiff unnecessarily incurred the expense of moving the press. The evidence at trial reflected that the *984 relocation process took three years, and therefore, it was not unreasonable for the plaintiff to install the Heidelberg Press in the R & S Building. Accordingly, we do not find that plaintiff unnecessarily incurred this expense.
With regard to the Catherine Street lease buyout, it was undisputed that at the time the plaintiff entered into the lease, it would need to find a new location. There was testimony to the effect that suitable locations were difficult to find, and stayed available for a relatively short period of time. Further, it was not unreasonable to later effect a lease buyout when the plaintiff discovered it could not afford the needed renovations. The trial court apparently accepted this testimony, and the testimony of Dr. Wade Ragas, who stated at trial that Southland acted in a prudent manner in attempting to secure a suitable property by executing the Catherine Street lease. We cannot say that the trial court erred in this finding.
In its last allegation of error, NOAB alleges that the trial court erred in its award of attorney fees. In considering the judgment and the Summary of Just Compensation, it appears that the trial court awarded $319,341.08, approximately one-third of the value of the damages, in attorney fees.[1]
In Rivet v. State, 96-0145 (La. App.9/5/96), 680 So.2d 1154, the Louisiana Supreme Court said:
Regardless of the language of the statutory authorization for an award of attorney fees or the method employed by a trial court in making an award of attorney fees, courts may inquire as to the reasonableness of attorney fees as part of their prevailing, inherent authority to regulate the practice of law. State, DOTD v. Williamson, 597 So.2d 439, 441-42 (La.1992) and cases cited therein. This court has previously noted that factors to be taken into consideration in determining the reasonableness of attorney fees include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) the amount of money involved; (5) the extent and character of the work performed; (6) the legal knowledge, attainment, and skill of the attorneys; (7) the number of appearances involved; (8) the intricacies of the facts involved; (9) the diligence and skill of counsel; and (10) the court's own knowledge. Id. at 442. We have further noted that these factors are derived from Rule 1.5(a) of the Rules of Professional Conduct [which require that an attorney's fees shall be reasonable.]
At trial, plaintiff introduced its contract with its attorney, which provided fees in an amount of one-third of the recovered judgment. In a post-trial memorandum, the plaintiff attached an affidavit to reflect that counsel spent over two thousand hours in the preparation of this case. This affidavit was not introduced at trial and cannot be considered as evidence in this case. It is clear from the record that the attorney ultimately obtained a result favorable for his client, that the litigation was complex, and that several court appearances, culminating in a five day trial, were made.
Accordingly, we reverse the trial court's award of attorney fees and remand the matter to the trial court to determine, after a hearing in which plaintiff is allowed to introduce evidence as to attorney fees actually incurred, the amount of attorney fees to be awarded, and to allow the court to specify a dollar amount. Rivet v. State, supra.

CONCLUSION
For the above discussed reasons, the judgment of the trial court is amended to delete the sum of $92,000.00 representing *985 compensation to Richard Lizotte and to delete the sum of $319,341.08, which we find the trial court awarded in attorney fees, for a judgment of $888,697.32. The case is remanded for an evidentiary hearing to set the amount of attorney fees warranted in the case.
AMENDED AND REMANDED.

*986
 APPENDIX
 SUMMARY OF JUST COMPENSATION
 
1. SEARCH EXPENSE:
 A. RICHARD LIZOTTE @ 1/3 OF COMPENSATION
 FOR 1994 TO THE PRESENT .......................... $92,500.00
 B. TERRY FISHER ...................................... $3,000.00
 C. BRUCE BOLYARD ...................................... $500.00
 _______
 SUBTOTAL FOR SEARCH ..................... $96,000.00
2. RENOVATIONS TO 3212 7TH STREET
 A. ELECTRICAL MODIFICATIONS ......................... $80,519.00
 B. AIR CONDITIONING AND HEATING ..................... $74,400.00
 C. GENERAL CONSTRUCTION ............................. $76,333.00
 D. ROOF ............................................. $48,130.00
 E. CONCRETE FLOOR COATING ............................ $8,009.00
 F. EXTERIOR FACADE AND CANOPY ....................... $24,000.00
 __________
 SUBTOTAL FOR RENOVATIONS ............... $311,391.00
3. TELEPHONE SYSTEM ...................................... $21,888.06
4. REPLACEMENT OF PARKING ................................ $39,041.00
5. MOVE OF PRESSES AND SPECIAL EQUIPMENT ................. $50,000.00
6. MOVE OF OFFICE AND OTHER PROPERTY ..................... $16,672.00
7. BUSINESS LOSSES FOR DOWNTIME FOR MOVE
 @ $5,000.00 PER DAY ....................................... 72,000
8 PROFESSIONAL FEES:
 A. MARK BAUM, ARCHITECT .............................. $71,477.53
 B. DAVID DEMONTE, CPA ................................ $10,197.50
 C. KENNETH STOKOE, PH.D., P.E. ........................ $12,324.06
 D. WADE RAGAS, PH.D., MAI ............................. $10,360.00
 E. JERRY GILLAN, P.E. .................................. $1,700.00
 F. ROBERT LACOUR, ESQ. ................................. $3,941.10
 SUB TOTAL FOR PROFESSIONAL FEES .......... $103,752.19
 

*987
9 BUYOUT OF LEASE AT 4400 CATHERINE STREET ............ $55,300.00
10. REPLACEMENT OF STATIONARY ............................ $6,801.00
11. ADVERTISEMENT OF NEW LOCATION ........................ $5,552.00
12. REPAINT OF DELIVERY TRUCK & NEW SIGNAGE .............. $2,500.00
13. BUSINESS LOSSES DUE TO DISRUPTIONS
 CAUSED BY NOAB CONSTRUCTION ACTIVITY ............... $158,232.00
14. EQUIPMENT REPAIR NEEDED BECAUSE OF NOAB
 CONSTRUCTION ACTIVITY .............................. $14,421.27
15. ATTORNEYS FEES @ 1/3 OF AWARD ...................... AT TRIAL
16. COURT COSTS ......................................... $1,985.33
17. LEGAL COSTS:
 A. INVOICES FOR EXHIBITS:
 1. VERNON F. MEYER (AERIAL PHOTOS) ........... $1,275.00
 2. MISCELLANEOUS EXHIBIT COST .................. $293.47
 B. LEGAL COSTS ................................... $17,345.00
 SUBTOTAL FOR LEGAL COSTS .............. AT TRIAL
19. JUDICIAL INTEREST FROM DATE OF FILING
 OF PETITION (4/21/95) UNTIL PAID ..............................
TOTAL JUST COMPENSATION .......... AT TRIAL

NOTES
[1] The dollars amounts alleged in the Summary of Just Compensation total $980,697.32. The judgment at trial awarded $1,300,038.40. Thus, the trial court awarded $319,341.08 in attorney fees.