LLOYD JOHNSON, JR.

VERSUS

SALADINO PHILIP, GRETNA POLICE
DEPARTMENT, CITY OF GRETNA,
ONEBEACON AMERICA INSURANCE
COMPANY

NO. 20-CA-262

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 749-021, DIVISION "P"
HONORABLE MAX N. TOBIAS, JR., AD HOC JUDGE PRESIDING


March 17, 2021


**FREDERICKA HOMBERG WICKER**
**JUDGE**


Panel composed of Judges Fredericka Homberg Wicker,
Stephen J. Windhorst, and John J. Molaison, Jr.


<u>**AFFIRMED AS AMENDED**</u>

    **FHW**
    **SJW**
    **JJM**

COUNSEL FOR PLAINTIFF/APPELLANT,
LLOYD JOHNSON, JR.
Ron A. Austin
M. Catherine Hilton

COUNSEL FOR DEFENDANT/APPELLEE,
SALADINO PHILIP, GRETNA POLICE DEPARTMENT, CITY OF GRETNA,
ONEBEACON AMERICA INSURANCE COMPANY
Leonard L. Levenson
Christian W. Helmke
Mark C. Morgan

**WICKER, J.**

In this appeal, the parties seek review of a judgment rendered following a bench trial that awarded plaintiff $39,000.00 in damages sustained from a May 3, 2014 motor vehicle accident. Both parties have appealed, challenging the amount awarded by the trial judge and raising additional specific assignments of error addressed below. For the following reasons, we amend the judgment to remove a named defendant, the Gretna Police Department, from the judgment. In all other respects, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 23, 2015, plaintiff, Lloyd Johnson, Jr., filed suit in the 24th Judicial District Court against defendants, Philip Saladino, the Gretna Police Department, and the City of Gretna, for personal injuries arising out of a May 3, 2014 motor vehicle accident.[1] In his petition, plaintiff alleged that Officer Saladino, a Gretna police officer, rear-ended his vehicle as he was stopped at the intersection of Leboeuf Street and U.S. 90 (the Westbank Expressway) in Jefferson Parish.

On July 14, 2015, the Gretna Police Department filed a peremptory exception of no right of action, asserting that the Gretna Police Department (hereinafter the Department) is not a juridical entity capable of being sued but rather is a "functional organization that is dependent upon and answers to the municipality[,]" the City of Gretna. On September 21, 2015, the trial court granted the exception, and "the Gretna Police Department" was dismissed from the litigation.

---

[1] The plaintiff also named OneBeacon Insurance Company as a defendant in his original petition, and later amended the defendant-insurer's name to Atlantic Specialty Insurance Company in an amended petition. Plaintiff later added as an additional defendant State Farm Mutual Insurance Company as plaintiff's underinsured/uninsured motorist insurer. State Farm was voluntarily dismissed from the litigation on October 29, 2019.

The matter proceeded to a bench trial before the Honorable Max Tobias, sitting *Ad Hoc*.[2] At trial, Officer Saladino testified that on the date of the accident he was driving down LeBoeuf Street toward its intersection with the Westbank Expressway responding to a non-emergency call without his lights or sirens activated.[3] He testified that the intersection of the two streets is on a skewed angle and there is a stop sign present. As he approached the intersection, with the intent to make a right-hand turn onto the expressway, he saw plaintiff's vehicle stopped at the stop sign in front of him. He then observed plaintiff's vehicle accelerate to pull out into traffic on the expressway. He stated that plaintiff however did not follow through with turning into the intersection but instead abruptly stopped his vehicle. Officer Saladino testified that he did not apply his brakes before impact, because he was not looking in front of him at the time of impact and was "rolling forward" to get into a better position to see oncoming traffic to turn onto the expressway. Concerning damage to his vehicle, Officer Saladino testified that his vehicle had a "push bumper" made of steel and rubber that was pushed in or damaged by the accident.

The responding Gretna police officer, Detective Cody Arabie, testified at trial that he determined that Officer Saladino's vehicle was traveling too closely to plaintiff's vehicle at the time of the accident.[4] He further testified that plaintiff's vehicle sustained no damage and that neither party complained of any injuries at the scene.

---

[2] On May 31, 2019, the sixteen judges of the 24th Judicial District Court signed an "Order of Recusation" recusing themselves from this litigation, stating that defendant Officer Saladino had been "recently appointed director of security for the Jefferson Parish General Government Complex which includes the Thomas Donelon courthouse which houses the 24th Judicial District Court." Out of an abundance of caution, the entire bench was recused and on June 5, 2019, the Louisiana Supreme Court appointed retired Judge Max N. Tobias, Jr. to sit *ad hoc* for this case.

[3] The parties stipulated at trial that Officer Saladino was in the course and scope of his employment with the Gretna City Police Department at the time of the accident.

[4] Officer Arabie testified that he did not issue Officer Saladino any traffic citation, citing officer discretion.

Plaintiff testified at trial that on the date of the accident he was traveling straightforward on LeBoeuf Street when he approached a stop sign. He came to a complete stop at the stop sign and looked to his left to merge into the traffic traveling west on the expressway when he was unexpectedly hit from the rear by another vehicle. He testified that the impact was "pretty hard" and that his head went forward and then back hitting the headrest. He testified that he was "shaken up" after the accident and rated the impact as a six to eight on a ten-point scale.[5]

Plaintiff testified that he began feeling some neck and back pain later that evening but took aspirin and went to bed. The next evening, he decided to stay home from work due to the pain. The following morning, he woke up in pain and decided to contact an attorney, who referred him to Westbank Physicians Rehab for treatment. He testified that Westbank Physicians Rehab administered injections for his pain, but that they didn't provide much if any relief. He testified that he treated approximately seven or eight months but that his pain never went away. He subsequently saw Dr. Richard Bostick for one clinic visit, who reviewed his cervical and lumbar MRIs and recommended additional physical therapy. However, plaintiff testified that he never received any follow-up treatment for his neck or back pain because he could not afford the medical bills he had incurred or the additional cost of physical therapy.[6]

Plaintiff testified that he was still in pain at the time of trial but acknowledged that from the date of his discharge from Westbank Physicians Rehab in December 2014, until October 2019, approximately two weeks after his deposition in this case, he was able to control his pain with over-the-counter pain medications.

---

[5] Plaintiff testified that his truck sustained approximately $1,300.00 in property damage.
[6] When questioned concerning his medical bills related to his treatment, plaintiff testified that he received bills in the mail from Westbank Physicians Rehab that he never paid. He further testified that Westbank Physicians Rehab never refused treatment due to non-payment and never threatened to report his outstanding balance to any credit bureau. The record reflects that his attorney, Ron Austin, paid the entire balance with Westbank Physicians Rehab related to plaintiff's medical treatment for a separate accident.

Plaintiff testified that, approximately one month after the accident at issue, on June 6, 2014, he was involved in a second accident in a parking lot, where another vehicle "hit the passenger's side of [his] door on the right side." He testified that he "shook" on impact and hurt his shoulder and side. He testified however that his neck and back pain from the accident at issue did not increase as a result of that second accident.[7] Plaintiff was thereafter involved in a third accident, in May 2015, when a left-turning vehicle turned directly in front of his vehicle while traveling on the Westbank Expressway. Plaintiff confirmed that, at the time of the May 2015 accident, he was no longer receiving any medical treatment for his neck and back injuries he alleges are related to the May 3, 2014 accident at issue.

Plaintiff testified that he was 59 years old at the time of trial and had never experienced neck or back pain prior to the accident and was a "pretty active" person. Concerning employment, he testified that he worked as an office clerk at F. Christiana's for approximately 18 years until December of 2018, and that he missed one week of work immediately following the May 3, 2014 accident.

At the time of the accident, plaintiff lived in Marrero with his elderly mother and his sister. He took care of his mother during the day and worked nights, and his sister worked during the day and cared for their mother at night. Plaintiff testified that he bathed and fed his mother and that after the accident he could no longer lift his mother and care for her properly. He also testified that if his sister was unable to care for their mother in the evening, he would feel guilty that he could not care for her while he was at work. His mother passed away in August 2018.[8]

---

[7] When asked to rate the impact of the June 2014 accident on a scale of one to ten, he rated it as a five or six out of ten.

[8] On cross examination, Johnson admitted that, in his October 2019 deposition he was asked to state which if any activities he could no longer perform since the accident at issue and, at that time, approximately one year after his mother's death, he did not disclose or complain that he could no longer help take care of his mother after the accident at issue.

Plaintiff testified that he suffers from anxiety and depression from this accident and that he is paranoid that he will be rear-ended every time he is stopped at a red light. Plaintiff acknowledged at trial that the first reported complaint of depression or anxiety to any physician was not until October 2019, five years after the accident at issue.

Dr. William Alden, the medical director for Westbank Physicians Rehab (hereinafter "WPR"), was accepted as an expert in internal medicine, physical medicine, and rehabilitation at trial. Dr. Alden testified that plaintiff began treatment with WPR on May 5, 2014, two days after the accident. At that visit, plaintiff complained of neck and back pain and reported that he had no pre-existing neck or back complaints. Dr. Alden recommended cervical and lumbar X-rays, administered an intramuscular injection of two anti-inflammatories, prescribed pain medication, and recommended plaintiff begin physical therapy. Plaintiff returned to WPR on May 15, 2014, and reported an 8 to 9 out of 10 on the pain scale for his neck and back pain and that his pain was worse at night or while sitting for long periods of time.

Plaintiff returned to WPR for a third visit on June 9, 2014. At that visit, plaintiff reported that he had been involved in a second motor vehicle accident in a parking lot on June 6, 2014. Plaintiff continued to treat with WPR for both the May 3, 2014 and the June 6, 2014 accidents until his December 17, 2014 discharge from treatment related to the May 3, 2014 accident at issue in this litigation. During that six-month period of time, WPR's medical records are utterly inconsistent.

The WPR medical records, introduced into evidence, reflect that between June 9, 2014 and December 17, 2014, WPR recorded two separate medical reports or records per individual medical visit. Each record or report referenced either the May 3, 2014 or the June 6, 2014 date of accident, and solely addressed pain

complaints related to that accident. For example, in a September 2014 report referencing the May 3, 2014 accident, WPR records reflect that plaintiff returned to WPR complaining of neck and back pain with radiating pain and cervical and lumbar spasms. On the exact same date, a second WPR record or report, referencing the June 6, 2014 accident, reflects that plaintiff returned to WPR complaining of right arm and side pain rated as a six out of ten and reports "good range" of the cervical and lumbar spines with "no spasms." There are several similarly conflicting reports.

At trial, Dr. Alden acknowledged that the methodology by which the reports were maintained is confusing, but suggested that the "best way" to get an "honest picture" of what is going on with the patient is to combine all of the positive findings from each report.[9] The records ultimately reflect that plaintiff treated with WPR for injuries related to the May 3, 2014 accident for a period of time from May 5, 2014 through December 17, 2014. In November 2014, WPR recommended plaintiff obtain an MRI of the cervical and lumbar spines and follow-up with an orthopedic specialist. On December 17, 2014, WPR discharged plaintiff from treatment related to the May 3, 2014 accident, finding that plaintiff had reached maximum medical improvement with WPR. Plaintiff continued to receive treatment for his right shoulder and arm related to the June 6, 2014 accident until March 2015. Thereafter, in May of 2015, plaintiff returned to WPR for additional treatment related to a third motor vehicle accident.

Dr. Alden acknowledged that plaintiff did not receive any medical treatment for his neck or back complaints for a period of more than four years from

---

[9] We do not opine on WPR's record-keeping, which further reflects double-billing a patient for two visits by two different doctors on the same day, but find no error in the trial judge's comments that "the court has no doubt that WPR kept three separate files on Johnson for his three accidents in an effort to hide from third parties such as insurance companies/ claims adjusters the existence of the three accidents and to try to multiple bill for their own benefit in attempt to collect multiple times for the same service from three separate persons."

December 17, 2014, until he returned on October 29, 2019, two weeks after his deposition taken in connection with this litigation.

On December 1, 2014, plaintiff obtained MRI imaging of his cervical and lumbar spines, which revealed multiple disc herniations and annular tears. Plaintiff called Dr. John Hamide, an interventional radiologist[10], to testify at trial concerning the MRI imaging studies. Dr. Hamide testified that he interpreted Johnson's December 1, 2014 cervical spine MRI and that he identified a disc herniation at the C2-3 level, a ruptured disc herniation with an annular tear at the C3-4 level, an annular tear at the C4-5 level, a disc herniation at the C5-6 level, and a disc bulge at the C6-7 level. Dr. Hamide testified that disc herniations and annular tears are both typically caused by trauma and are identifiable on an MRI image for approximately 18 months after the trauma.[11] He explained that the ruptured disc herniation, which means that the annulus has torn and is completely unraveled in the disc, at the C3-4 level reflects that the trauma was a significant trauma. He further stated these are significant cervical injuries and consistent with hyperflexion injuries sustained in rear-end motor vehicle accidents.

Dr. Hamide also interpreted plaintiff's December 1, 2014 lumbar spine MRI imaging. He testified that the most significant finding in the lumbar spine is at the L5-S1 level, reflecting a disc herniation with severe neural foraminal narrowing with compression and an annular tear. The imaging at the L5-S1 level reflected disc desiccation without height abnormality, consistent with degenerative changes. However, he testified that because this level has an annular tear, it is more likely than not the result of a traumatic event.

---

[10] The parties stipulated to Dr. Hamide's qualification as an expert as an interventional radiologist with the limitation that Dr. Hamide is not a Board-certified interventional radiologist.
[11]Dr. Hamide testified that 87% of annular tears are the result of trauma, and not the degenerative process.

Dr. Hamide testified that the cervical and lumbar MRI studies revealed desiccated discs without height abnormality, which are signs of degenerative changes and are typical for a person plaintiff's age. He further stated that a 55-year old person with degenerative changes is more at risk to suffer a herniation from a trauma or accident than a younger person. On cross-examination, Dr. Hamide acknowledged that there is no method by which a radiologist can determine or distinguish between two accidents and which of the two previous accidents may be the causal factor for the trauma.

Dr. Richard Bostick, an orthopedic surgeon, testified at trial that he examined plaintiff on one occasion on March 19, 2015. He reviewed plaintiff's cervical and lumbar MRI images, and explained that annular tears can be either degenerative or trauma-related, but that you cannot make that determination from review of MRI imaging alone. He opined that plaintiff had a "mixture" of degenerative and trauma related issues but causally related plaintiff's pain symptoms to the May 3, 2014 accident. However, at trial he testified that he was unaware that plaintiff had been involved in a second accident one month after the accident at issue and acknowledged that without reviewing the related medical records and with the MRI imaging alone, it would be impossible to determine which accident caused plaintiff's symptoms.

Dr. Bostick recommended that plaintiff take anti-inflammatories and participate in a certain physical therapy program that his office is familiar with for cervical and lumbar issues. He estimated that program to be about $3,000.00.

Defendants retained Dr. David Smith, accepted as an expert in general radiology, to review plaintiff's cervical and lumbar MRI images. Dr. Smith testified that it is not possible to distinguish between degenerative findings and traumatic findings through MRI imaging without observing acute change such as fractures or hematomas, which he did not find any evidence of in plaintiff's MRI

images. He also testified, however, that because plaintiff's MRI imaging was performed months after the accident, no acute findings would likely be present by that time. He explained that most acute abnormalities evolve or resolve within months after an acute trauma. Dr. Smith agreed that plaintiff's cervical and lumbar MRI images reflect herniations and annular tears at various levels. However, he explained that all of the findings in the December 1, 2014 MRI images are common in degenerative changes in the spine for someone plaintiff's age.

As to plaintiff's cervical spine, Dr. Smith testified there is spinal canal stenosis at the C3-4 level with minimal compression, "because of the disc disease that's in front of it…[it's] sort of being moved out the way by some adjacent disc disease." At that level, he also observed an annular tear, which he testified is not indicative of acute trauma. Rather, he testified that "they [annular tears] are well known to be the earliest findings in degenerative disc disease." At the C4-5 level, he observed a 2 mm disc bulge which he testified is entirely common with degenerative changes. At the C5-6 level, he observed another disc herniation with an annular fissure, which he testified cannot be related to any trauma.

As to plaintiff's lumbar spine, Dr. Smith found that all of plaintiff's lumbar spine findings are common in patients who are plaintiff's age. Further, Dr. Smith explained that normal, young, healthy discs have fluid in them, which is reflected as a pure white color on an MRI image. When discs degenerate and become dehydrated with less fluid, that indication is reflected as a darker or black color on the MRI image. Dr. Smith testified that plaintiff's December 1, 2014 lumbar spine MRI imaging reflects dehydration at various levels and is not uncommon for a 54-year-old individual.

Dr. Smith disagreed with Dr. Hamide's opinion that plaintiff's annular tears are trauma-related. Rather, Dr. Smith testified that the research shows that annular fissures and tears "are well known to be the earliest findings in degenerative disc

disease."[12] Dr. Smith, based upon the MRI imaging, opined that plaintiff suffered from moderate degenerative disc disease.

Dr. Felipe Ramirez-Terrassa, a board-certified expert in spine and orthopedic surgery, conducted an independent medical examination (IME). Dr. Ramirez-Terrassa testified that he examined plaintiff on one occasion on October 2, 2019. He stated that, during the exam, plaintiff would "grunt" in pain with nearly every movement. Dr. Ramirez-Terrassa testified that plaintiff's pain responses were unusual and appeared exaggerated, stating plaintiff's pain responses were "not the usual responses that a patient that has [with] organic pain."

Dr. Ramirez-Terrassa ultimately concluded that plaintiff suffers from degenerative disc disease of the lumbar and cervical spines. He explained that degenerative changes can be asymptomatic and that such changes can render an individual more at-risk for soft-tissue injury. He further agreed that a trauma like a motor vehicle accident can cause asymptomatic degenerative findings to become symptomatic and cause pain.

During his October 2, 2019 exam, plaintiff reported anxiety and a 60-pound weight gain to Dr. Ramirez-Terrasse. In the medical records completed by Dr. Ramirez-Terrassa, the section for "serious personal problems" on the intake form was completed with a notation that Johnson's mother had passed away in 2018. Dr. Ramirez-Terrassa testified that, during his examination of plaintiff, plaintiff attributed his personal problems to his mother's passing. Consequently, Dr. Ramirez-Terrassa testified that he would not relate plaintiff's anxiety or weight gain to any particular accident.

---

[12]Dr. Smith referred to an article published in the American Journal of Neuroradiology from 2009 titled, "Association Between Annular Tears and Disc Degeneration, a Longitudinal Study" and STATdx, the standard online textbook utilized in 90%-95% of radiology programs, to support his testimony concerning annular tears and their relation to degenerative disc disease.

Dr. Ramirez-Terrassa testified that, if he were plaintiff's treating physician, he would recommend conservative treatment as needed for pain. He further opined that he does not believe there is any indication for surgical intervention.

Following a three-day bench trial, the trial judge issued a written judgment in favor of plaintiff and against defendants, awarding plaintiff $39,000.00, inclusive of both general and special damages.[13] The trial judge issued written reasons for judgment upon request.

In his reasons, the trial judge found that Officer Saladino was solely at fault for the accident at issue. Concerning plaintiff's injuries, the trial judge found that plaintiff suffered from a degenerative condition that preexisted the accident but was made symptomatic by the May 3, 2014 accident at issue. The trial judge found that plaintiff continued to experience some pain, but that he had not received medical treatment since December 2014 for that pain, pointing out that, "Johnson ceased treatment in December 2014 for the first two accidents and did not return for further evaluation related to the May 3 accident until October 2019, close to the date of trial." Concerning plaintiff's depression and loss of enjoyment of life claims, the trial judge found that plaintiff's mother's deteriorating condition and ultimate passing, rather than the accident at issue, caused plaintiff's mental depression and anxiety.

Both parties have appealed the trial court judgment. On appeal, plaintiff contends that (1) the trial court's award of general and special damages is abusively low and (2) the trial judge erred in failing to award plaintiff damages for mental distress, loss of enjoyment of life, medical expenses, or future medical treatment. Defendants, on appeal, contend that (1) the trial court's award of

---

[13] The trial court judgment further dismissed defendant OneBeacon Insurance Company from the litigation and no party has appealed that portion of the judgment. The trial court judgment additionally awarded interest on the costs of the proceedings. That portion of the judgment is also not at issue in this appeal.

general and special damages is abusively high and (2) the trial court erred in including the Gretna Police Department as a named defendant in the February 2, 2020 judgment because the Department had been previously dismissed as a party pursuant to an exception of no right of action.

For the following reasons, we find that the trial judge did not abuse his vast discretion in awarding plaintiff $39,000.00 in general and special damages. We amend the judgment however, in part, to remove The Gretna Police Department as a party to the judgment, as the record reflects the Department had been dismissed prior to trial. In all other respects, we affirm.

## DISCUSSION

In reviewing a general damage award, this Court has recently stated:

General damages are those which may not be fixed with pecuniary exactitude; instead, they 'involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle which cannot be definitely measured in monetary terms.' *Bellard v. Am. Cent. Ins. Co.*, 07-1335 (La. 4/18/08), 980 So.2d 654, 674, quoting *Duncan v. Kansas City Southern Railway Co.*, 00-66 (La. 10/30/00), 773 So.2d 670. The assessment of the appropriate amount of damages, by a trial judge or jury, is a determination of fact, one entitled to great deference on review. *Joseph v. Neth. Ins. Co.*, 15-549 (La. App. 5 Cir. 2/24/16), 187 So.3d 517, 519, citing *Wainwright v. Fontenot*, 00-492 (La. 10/17/00), 774 So.2d 70, 74. The role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. *Id.* Before a court of appeal can disturb an award made by a fact finder, the record must clearly reveal that the trier of fact abused its discretion in making its award. *Thibodeaux v. Donnell*, 16-570 (La. 1/20/17), 219 So.3d 274, 278, citing *Coco v. Winston Industries, Inc.*, 341 So.2d 332, 332 (La. 1976).

*Woods v. Winn - Dixie Montgomery, L.L.C.*, 17-707 (La. App. 5 Cir. 6/27/18), 251 So.3d 675, 684-685.

Therefore, because the discretion vested in the trier of fact is so great, and even vast, an appellate court should rarely disturb an award on review. *Latulippe v. Braun*, 18-83 (La. App. 5 Cir. 8/10/18), 253 So. 3d 820, 832–33, citing *Guillory v. Lee*, 09-0075 (La. 6/26/09), 16 So.3d 1104, 1117(quotations omitted); *Youn v.*

*Maritime Overseas Corp., et al.,* 623 So.2d 1257, 1261 (La. 1993), *reh'g denied*, 10/7/93.  An appellate court may not overturn an award for general damages unless it is so out of proportion to the injury that it shocks the conscience. *Latulippe,* 253 So. 3d at 834; *Ursin v. Russell*, 07-859 (La. App. 5 Cir. 2/6/08), 979 So.2d 554, 560.

Further, general and special damages may be awarded *in globo*, and such an award will not be set aside absent an abuse of discretion. *Martinez v. Wilson*, 19-0017 (La. App. 1 Cir. 9/27/19), 287 So.3d 27, 35.  When a lump sum award is challenged as excessive, the appellant's burden of proving the fact-finder abused its discretion is even more difficult because the intention to award a specific amount for any particular item is not readily ascertainable.  *Id*.; see *Bryan v. City of New Orleans*, 98-1263 (La. 1/20/99), 737 So.2d 696, 697; *Johnson v. Henry*, 16-0271 (La. App. 1 Cir. 10/31/16), 206 So.3d 916, 919; *Franklin Southland Printing Co. v. New Orleans Aviation Bd.*, 99-60 (La. App. 5 Cir. 7/27/99), 739 So.2d 977, 980.

In this case, plaintiff appeals the trial court's award, contending that the award is abusively low.  Defendants, on the other hand, have filed an Answer to the Appeal, contending that the award is abusively high.  Upon our thorough review of the record in this matter, we do not find that the $39,000.00 *in globo* award in general and special damages is an abuse of the trial judge's great discretion.

In his written reasons, the trial judge found that Officer Saladino's actions in rear-ending plaintiff was the sole proximate cause of the May 3, 2014 accident.[14]  However, the trial judge did not causally relate plaintiff's lumbar and cervical spine MRI findings to the accident at issue.  Rather, concerning plaintiff's physical injuries, the trial judge found that plaintiff suffered from a pre-existing

---

[14] He further found that plaintiff's second, June 6, 2014 accident was not of "material severity."

asymptomatic degenerative condition and that his "cervical (C2-C3, C3-C4 and CS-6 levels) and lumbar spine (at three levels) were diseased from the aging and degenerative process of merely being alive." Although plaintiff's physicians at trial causally related plaintiff's MRI findings to the accident at issue, the trial judge is permitted to accept or reject, in whole or in part, the expert testimony of any witness.[15] *Allensworth v. Grand Isle Shipyard, Inc.*, 15-257 (La. App. 5 Cir. 10/28/15), 178 So.3d 191, 195.

At trial, defendants presented the testimony of Dr. Smith, who opined that plaintiff suffered from moderate degenerative disc disease in his cervical and lumbar spines and that plaintiff's MRI findings are consistent with a person of plaintiff's age. Thus, the record contains evidence upon which the trial court could rely in finding that plaintiff suffered an aggravation of a preexisting asymptomatic degenerative condition. Accordingly, we find the trial court was reasonable in its analysis and in awarding damages consistent with an approximate seven-month treatment for an aggravation of a preexisting degenerative condition rendered symptomatic after the accident.[16] Upon our review of the record, we find that the trial judge did not clearly abuse his great discretion in awarding plaintiff $39,000 *in globo* for his past and future general and special damages.

---

[15] In his reasons for judgment, the trial judge pointed out that defense counsel "meticulously and thoroughly demolishes the credibility of WPR's reports contained in the files and of Dr. Alden." We disagree with plaintiff's contention that the trial judge "punished" plaintiff for WPR's inaccurate and questionable record-keeping practices. Although the trial judge correctly found that such record-keeping is utterly inconsistent and made it "difficult" to analyze plaintiff's treatment during that 7-month time-period, there is also no dispute that plaintiff was discharged and sought no further consistent treatment for his neck and back pain after December 2014, until immediately before trial.

[16] In his brief, plaintiff asks this Court to compare the damages award given in this case with prior awards given in other cases involving similar injuries. However, in *Youn,* 623 So.2d at 1260, the Louisiana Supreme Court instructed that it "disapproved of the use of a scale of prior awards in cases with generically similar medical injuries to determine whether the particular trier of fact abused its discretion in the awards to the particular plaintiff under the facts and circumstances peculiar to the particular case." The court further said that it is only after the reviewing court finds an abuse of the trial court's vast discretion in setting an award of damages can it then "resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion." *Id.*, citing *Coco, supra.* Because we do not find an abuse of the vast discretion afforded the trial court in setting the award for damages in this case, we cannot resort to a review of prior awards to determine whether or not the award in this case is abusively low or excessive.

On appeal, plaintiff contends that the trial court erred in failing to award him additional damages for past medical expenses, future medical expenses, loss of enjoyment of life, and mental distress. First, we find that the trial judge did award plaintiff for past medical expenses, as stated in his reasons for judgment. Therefore, plaintiff's assignment has no merit.[17] Second, as to future medical expenses, the reasons for judgment do not specifically address whether the trial judge awarded future medical expenses. Although Dr. Bostick recommended a $3,000.00 physical therapy program and Dr. Alden recommended future injections and treatment, the trial judge found that Dr. Alden lacked credibility and, thus, could have rejected Dr. Alden's recommendations.

Because the award is *in globo*, it makes it more difficult for this Court to find that the trial judge abused his discretion as to any one item of damages. *See Bryan, supra*. However, unless stated otherwise, a lump sum judgment is presumed to award and dispose of all items of damages claimed. *Bryan, supra*. The trial judge may have in fact contemplated $3,000.00 in future physical therapy costs to be included in the $39,000.00 judgment. Alternatively, the trial judge may have found that plaintiff failed to meet his burden to prove that he required additional medical treatment in light of the fact that he did not seek medical treatment or prescription pain medication for his alleged neck and back pain from the accident at issue for approximately five years after his discharge from treatment. Based upon the record before us, we cannot say that the trial court erred in its judgment.

Concerning plaintiff's claim for loss of enjoyment of life and mental distress, the trial judge found that plaintiff's mental distress and loss of enjoyment of life are related to his mother's death and not to the accident at issue. The record

---

[17] The trial judge however found that plaintiff should not be held responsible for any medical billing related to his treatment for this accident with WPR in light of WPR's questionable billing practices. Neither party has challenged that finding.

reflects that the first reported complaint of any mental distress or loss of enjoyment of life came nearly five years after the accident at issue in October 2019. In his testimony, Dr. Ramirez-Terrassa opined that plaintiff's personal anxiety, stress, and depression are related to his mother's death. Plaintiff testified that, at 55-years-old, he lived with his mother and cared for his mother daily prior to her death. We find the trial judge was well within his discretion to find that any depression or mental distress plaintiff may currently suffer is related to his mother's death, and in finding that plaintiff failed to meet his burden to prove that the May 3, 2014 accident at issue caused any significant mental distress or loss of enjoyment of life.

## Conclusion

Accordingly, we find that the trial judge did not abuse his great discretion in awarding plaintiff $39,000.00 for general and special damages related to his injuries sustained in the May 3, 2014 accident at issue in this litigation. Because we find that "the Gretna Police Department" was previously dismissed as a named party to this suit pursuant to an exception of no right of action prior to trial, we amend the trial court's February 2, 2020 judgment to remove the Gretna Police Department as a party to the judgment. In all other respects, the trial court judgment is affirmed.

**AFFIRMED AS AMENDED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**MARCH 17, 2021** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 20-CA-262

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE MAX N. TOBIAS, JR. (DISTRICT JUDGE)
M. CATHERINE HILTON (APPELLANT)      RON A. AUSTIN (APPELLANT)         ALLISON K. NESTOR (APPELLEE)
JEFFERY P. BROTHERS (APPELLEE)       LEONARD L. LEVENSON (APPELLEE)

**MAILED**
BENJAMIN SANDERS (APPELLEE)          CHRISTIAN W. HELMKE (APPELLEE)
DAVID L. COLVIN (APPELLEE)           COLLEEN B. GANNON (APPELLEE)
MARK C. MORGAN (APPELLEE)            DONNA R. BARRIOS (APPELLEE)
MATTHEW R. FRANSEN (APPELLEE)        ATTORNEYS AT LAW
ATTORNEYS AT LAW                     650 POYDRAS STREET
230 HUEY P. LONG AVENUE              SUITE 2750
GRETNA, LA 70053                     NEW ORLEANS, LA 70130